LUKENS LAW GROUP
WILLIAM M. LUKENS (SBN 037196)
JENNIFER L. JONAK (SBN 191323)
One Maritime Plaza, Suite 1600
San Francisco, CA  94111
Telephone: (415) 433-3000
Facsimile: (415) 781-1034

Attorneys for Defendant Cheol Hoon Lee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CLEAR CHANNEL OUTDOOR, INC., a
Delaware Corporation,

               Plaintiff,

      v.

CHEOL HOON LEE, an individual,

               Defendant.

CASE NO.  08-CV-2955 PJH

**MEMORANDUM IN SUPPORT OF
DEFENDANT LEE'S MOTION TO
DISMISS, MOTION TO STRIKE
AND MOTION FOR ANTI-SLAPP
RELIEF**

Date:  September 10, 2008
Time:  9:00 a.m.
Dept.:  Courtroom 3, 17th Floor
Judge:  The Hon. Phyllis Hamilton

*Lukens Law Group
One Maritime Plaza, Suite 1600
San Francisco, CA 94111*

1

## **TABLE OF CONTENTS**

2

3

4    I.    INTRODUCTION……………………………………………………....…2

5    II.    ARGUMENT………………………………………………………………...4

6         A.    Legal Standard……………………………………………………4

7         B.    The Noerr-Pennington Doctrine Bars Clear Channel's Claims……..........4

8
         C.    Clear Channel's Claims Are Barred by California's Anti-SLAPP
9              Laws……………………………………………………..……...7

10
         D.    Clear Channel Fails To State A Claim For Breach of Contract…………10

11
              1.    Clear Channel Fails to Allege the Element of Breach…………..10
12
              2.    The Litigation Privilege Bars Clear Channel's Claim
13                   for Breach…….................................................................12

14
              3.    Clear Channel Fails to Allege Any Cognizable Damages……….13
15
         E.    Clear Channel Fails To State A Claim for Promissory Estoppel………...16
16
         F.    Clear Channel Lacks Jurisdiction For Its Declaratory Relief Claim…….17
17
         G.    Clear Channel's Prayer for Attorney's Fees Must Be Stricken…………22
18

19    III.    CONCLUSION…………………………………………………..…22

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

### CASES

*Affordable Housing Development Corp. v. City of Fresno*,
    433 F.3d 1182 (9th Cir. 2006) ……………………………………………………5

*Allstate Insurance Co. v. West Virginia State Bar*,
    233 F.3d 813 (4th Cir. 2000) ……………………………………………………20

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal.4th 503 (1994) ………………………………………………………...……..14

*Boone v. Redevelopment Agency of San Jose*,
    841 F.2d 886 (9th Cir. 1988) ……………………………………………...……..5-6

*Braun v. Chronicle Publishing Co.*,
    52 Cal.App.4th 1036 (1997) …………………………………………………....…9

*Bridgewater Operating Corp. v. Feldstein*,
    346 F.3d 27 (2d Cir. 2003) ………………………………………………………19

*Briggs v. Eden Council for Hope & Opportunity*,
    19 Cal.4th 1106 (1999) ………………………………………………...………9

*Bureerong v. Uvawas*,
    922 F.Supp. 1450 (C.D.Cal. 1996) …………………………………………....…22

*California Beverage & Supply Co. v. Distillers Distributing Corp.*,
    158 Cal.App.2d 758 (1958) ……………………………………………...……15

*California Motor Transport Co. v. Trucking Unlimited*,
    404 U.S. 508, 510-11 (1972) ………………………………..…………………4

*Calvert v. Safranek*,
    209 Fed.Appx. 816 (10th Cir. 2006) …………………………………………..…20

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
    2 Cal.4th 342 (1992)..…………………………………………………………12

*Carson v. Facilities Dev., Co.*,
    36 Cal.3d 830 (1984)..……………………………………………..……………8

*Charchenko v. City of Stillwater,*
    47 F.3d 981 (8th Cir. 1995)……………………………………………20

*Church v. Jamison,*
    143 Cal.App.4th 1568 (2006) ……………………………………...……11

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) …………………………………..…………11

*ComputerXpress, Inc. v. Jackson,*
    93 Cal.App.4th 993 (2001) …………………………………………………8

*Covenant Media of Cal., L.L.C. v. City of Huntington Park, Cal.,*
    377 F.Supp.2d 828 (C.D.Cal. 2005) …………..……………………13

*Department of Industrial Relations v. UI Video Stores, Inc.,*
    55 Cal.App.4th 1084 (1997) ……………………………………...……12, 18

*District of Columbia Court of Appeals v. Feldman,*
    460 U.S. 462 (1983) …………………………..…………………….19, 20

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961) …………………………………………………………4

*Equity Lifestyle Properties, Inc. v. County of San Luis Obispo,*
    505 F.3d 860 (9th Cir. 2007) ……………………………...………..21

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
    544 U.S. 280 (2005) …………………………………..……………19

*Feick v. Fleener,*
    653 F.2d 69 (2nd Cir. 1981)…………………………………………..4

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive
Bd. of Culinary Workers,*
    542 F.2d 1076 (9th Cir. 1976)…………………………………………..6

*Gen-Probe, Inc. v. Amoco Corp.,*
    926 F.Supp. 948 (S.D.Cal. 1996) ……………………………………5

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    63 F.Supp.2d 1127 (N.D.Cal. 1999) ……………………...…….....7, 10

*Greif v. Dullea,*
    66 Cal.App.2d 986 (1944) ………………………………………9, 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Healy v. Brewster,*
  59 Cal.2d 455 (1963) ……………………………………………………16

*Jacksonville Newspaper Printing Pressmen and Assistants' Union
No. 57 v. Florida Publishing Co.,*
  340 F.Supp. 993 (M.D.Fla. 1972) ………………………………………11

*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority,*
  23 Cal.4th 305 (2000) ……………………………………………………16

*Laborde v. Aronson,*
  92 Cal.App.4th 459 (2001) …………………………………………...……13

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.,*
  34 Cal.4th 960 (2004) …………………………………………...……………14

*Manistee Town Center v. City of Glendale,*
  227 F.3d 1090 (9th Cir. 2000) ………………………………….…………6

*Marina Point Development Associates v. U.S.,*
  364 F.Supp.2d 1144 (C.D.Cal. 2005) ……………………………………5

*Mathis v. Pacific Gas and Elec. Co.,*
  75 F.3d 498 (9th Cir. 1996)……………………………………………4

*McKell v. Washington Mutual,*
  142 Cal.App.4th 1457 (2006) ………………………………….……10, 13

*Metabolife Intern., Inc. v. Wornick,*
  264 F.3d 832 (9th Cir. 2001)……………………………………………7

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ………………………………………...……………21

*Mike Nelson Co., Inc. v. Hathaway,*
  2005 WL 2179310 (E.D.Cal. Sept. 8, 2005) …………………………17

*Mitchell v. Fishbein,*
  377 F.3d 157 (2nd Cir. 2004) ………………………………….…………20

*Money Store Investment Corp. v. Southern California Bank,*
  98 Cal. App. 4th 722 (2002) ……………………………...………………17

*Moran v. Harris,*
  131 Cal.App.3d 913 (1982) …………………………….……………18

*Nader v. The Democratic Nat. Committee,*
    --- F.Supp.2d ----, 2008 WL 2174238 (D.D.C., May 27, 2008) ……….………6

*Navellier v. Sletten,*
    29 Cal.4th 82 (2002) …………………………………………………..………9

*New.Net, Inc. v. Lavasoft,*
    356 F.Supp.2d 1090 (C.D.Cal. 2004) …………………………………………8

*Ove v. Gwinn,*
    264 F.3d 817 (9th Cir. 2001)……………………………………………………4

*Palda v. General Dynamics Corp.,*
    47 F.3d 872 (7th Cir. 1995) ………………………………………….………..11

*Papasan v. Allain,*
    478 U.S. 265 (1986) ………………………………………………………..…10

*Patent Scaffolding Co. v. William Simpson Const. Co.,*
    256 Cal.App.2d 506 (1967) …………………………………………..………13

*Pfeiffer Venice Props. v. Bernard,*
    101 Cal.App.4th 211 (2002) ………………………………………………....8

*Pollock v. Superior Court,*
    229 Cal.App.3d 26 (1991) ……………………………………………………13

*Prentis v. Atlantic Coast Line Co.,*
    211 U.S. 210, 226 (1908) …………………………………………..…………19

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,*
    508 U.S. 49 (1993) …………………………………..………………………5, 6

*Raedeke v. Gibraltar Savings & Loan Assn.,*
    10 Cal.3d 665 (1974)…………………………………………………………17

*Ramona Unified School Dist. v. Tsiknas,*
    135 Cal.App.4th 510 (2005) …………………………...………………………7

*Robertson v. Dean Witter Reynolds, Inc.,*
    749 F.2d 530 (9th Cir. 1984)……………………………………………….....4

*Rogers v. Home Shopping Network, Inc.,*
    57 F.Supp.2d 973 (C.D.Cal. 1999) ……………………………………………6

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923) ……………………………………………...…19

*Rosales v. Citibank, Federal Sav. Bank*,
    133 F.Supp.2d 1177 (N.D.Cal. 2001) …………………………………...22

*Royal Neckwear Co. v. Century City, Inc.*,
    205 Cal.App.3d 1146 (1988) …………………………………………15

*RPD Long Beach v. Tranter-Hare Inv. Bldg. Corp.*,
    2008 WL 269444 (S.D.Ohio 2008) …………………………………...21

*Sackett v. Spindler*,
    248 Cal.App.2d 220 (1967) ……………..…………………………15

*Signal Hill Aviation Co. v. Stroppe*,
    96 Cal.App.3d 627 (1979) …………………………………………16

*Silberg v. Anderson*,
    50 Cal.3d 205 (1990) ……………………………………………13

*Smith v. Royal Mfg. Co.*,
    185 Cal.App.2d 315 (1960) …………………………………..………10

*Sommerfield v. Helmick*,
    57 Cal.App.4th 315 (1997) ……………………...……………………9, 20

*Sutherland v. Barclays American/Mortgage Corp.*,
    53 Cal.App.4th 299 (1997) …………………………………...……15

*Tanner v. Title Ins. & Trust Co.*,
    20 Cal.2d 814 (1942) ……………………………………………12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S.Ct. 2499 (2007)………………………………………………..4

*Thomas v. Kadish*,
    748 F.2d 276 (5th Cir. 1984) …………………………………..……20

*Toscano v. Greene Music*,
    124 Cal.App.4th 685 (2004) ………………………………….………16

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) ………………………………………………..4

*United States ex rel. Sommer v. Dixon,*
    524 F.Supp. 83 (N.D.N.Y. 1981)……………………………………………4

*US Ecology, Inc. v. State,*
    129 Cal.App.4th 887 (2005) ……………………………………...........16

*Verizon Maryland Inc. v. Public Service Commission,*
    535 U.S. 635 (2002) ………………………………………………..……19

*Walker v. KFC Corp.,*
    728 F.2d 1215 (9th Cir.1984)…………………………………………16

*Wentland v. Wass,*
    126 Cal.App.4th 1484 (2005) …………………………………...……12

*Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.,*
    276 F.Supp.2d 1046 (E.D.Cal. 2003) ………………..…………………5

*Wilcox v. Superior Court,*
    27 Cal.App.4th 809 (1994) ……………………..………………….8-10

*Younger v. Harris,*
    401 U.S. 37 (1971) …………………………………………………21

*Youngman v. Nevada Irrigation Dist.,*
    70 Cal.2d 240 (1969) ………………………………………………16

## STATUTES AND REGULATIONS

Cal. Bus. & Prof. Code §14100. …………………………………...…………15

Cal. Civ. Code § 1717……………………………………………………22

Cal. Civ. Code § 47…………………………………………………...12-13

Cal. Civ. Code § 3358……………………………………………………14

Cal. Code Civ. Pro. § 425.16……………………………………...…7-10

Cal. Code Civ. Pro. § 1094.5………………………………………………21

Cal. Code Civ. Pro. § 1021……………………………………..……………22

City and County of San Francisco Bus. & Tax Reg. Code
     Article 1, §§ 8, 8a, 9, 10, 11, 12, 13, 14, 15, 16, 29, 30 & 31………..……………9

City and County of San Francisco Charter § 4.106……………………………….…………9

Fed. R. Civ. P. 12……………………………………………………………………*passim*

Fed. R. Evid. 501……………………………………………………………………...……12

## SECONDARY AUTHORITIES

24 Williston on Contracts (4th ed. 2002) § 64:1………………………………………14

1 Witkin, Summary of California Law: Contracts § 247 (10th ed. 2005)………………17

1    **I.    INTRODUCTION**

2         Defendant Cheol Hoon Lee is a 71 year old, retired dentist who emigrated from South

3    Korea.  As part of his retirement savings, in 1987, he purchased a building located on Market

4    Street that had a billboard dating from the 1930s.  At the time of his purchase, Clear Channel

5    Outdoor, Inc.'s predecessor was renting the sign space inside the billboard structure for $550 per

6    month.  Clear Channel Outdoor, Inc. ("Clear Channel"), who assumed the lease, is one of the

7    world's largest outdoor advertising companies and reported over $775 million in first quarter

8    2008 revenues.

9         As the lease neared its expiration, Mr. Lee attempted to negotiate a market rent with

10   Clear Channel.  Clear Channel was paying only $850 per month, even though market rents on

11   similar billboard structures in San Francisco had gone up to $10,000 to $20,000 per month, and

12   Clear Channel was making an enormous profit from renting the billboard to other advertisers.

13   Clear Channel refused to renegotiate the lease to pay market rent or anything close to market

14   rate.  It told Mr. Lee to "take it or leave it."  Mr. Lee declined to renew the lease on Clear

15   Channel's demanded terms.

16        On May 9, 2007, a few days before the lease expired, Clear Channel filed paperwork with

17   the City of San Francisco for a "removal permit."  Clear Channel did not provide any notice to

18   Mr. Lee of this.  Within a few days, without even waiting for the mandatory 15 day period under

19   the permit provisions, Clear Channel sent a construction crew to the building and removed the

20   entire billboard structure.  San Francisco has a law, known as "Proposition G" (codified at

21   Article 6 of the San Francisco Planning Code), which prevents anyone from putting up a new

22   billboard, including where a billboard has been voluntarily removed.  Clear Channel's removal

23   was intended to prevent Mr. Lee from ever renting his billboard again, since he had refused to

24   renew Clear Channel's below-market lease.

25        Mr. Lee was shocked when he learned that Clear Channel had demolished the billboard

26   structure that had been on the building for over 70 years.  He appealed to the City of San

27   Francisco to allow him to put up another billboard to replace the one that Clear Channel had

28   destroyed.  After almost a year of litigation, in which Clear Channel's attorneys attempted to

1   prevent Mr. Lee from obtaining another billboard, the San Francisco Board of Appeal issued a

2   unanimous decision in Mr. Lee's favor.  The Board of Appeal found that Mr. Lee's billboard

3   structure had not been removed voluntarily, that Clear Channel had acted improperly and without

4   authority in obtaining its removal permit, and that Mr. Lee should be permitted to replace the

5   billboard structure that Clear Channel had destroyed.  The Board of Appeal also noted

6   companies like Clear Channel's "pattern of heavy-handed business practices" in lease renewal

7   negotiations.  (A copy of that ruling is attached as Exhibit 1 to Request for Judicial Notice

8   ("RJN").)

9       A month after this written decision issued, Clear Channel filed two separate actions

10  within days of each other:  a writ petition in the California courts challenging the Board of

11  Appeal's ruling and this personal lawsuit against Mr. Lee for breach of contract, promissory

12  estoppel and declaratory relief.

13      Clear Channel's case is nothing more than legal extortion of the worst kind.  Hoping that

14  its strong arm tactics will intimidate an elderly Korean immigrant, Clear Channel seeks to

15  prevent Mr. Lee from ever making use of a billboard structure – in retaliation for his refusal to

16  rent to Clear Channel at $1/20^{th}$ of market rents.  Mr. Lee is a symbol to other billboard lessors of

17  what will happen to those who refuse to bow to the billion dollar company's price-fixing tactics.

18      Clear Channel's lawsuit, however, has no legal or factual basis.  Mr. Lee's pursuit of an

19  administrative appeal to replace the billboard structure removed by Clear Channel – the sole act

20  by Mr. Lee on which the complaint is based – cannot be a predicate for liability.  That would

21  violate his First Amendment rights, as well as the Noerr-Pennington doctrine and California's

22  anti-SLAPP laws.  Nor does losing an appeal constitute cognizable damage to Clear Channel.

23  Otherwise, the losing party in every case would suffer "damage to goodwill."  Clear Channel's

24  promissory estoppel claim cannot stand where it claims to rely on an express written contract,

25  and it lacks jurisdiction for its declaratory relief claim, particularly while it is simultaneously

26  pursuing a writ with the California Superior Court.

27      The Court should dismiss Clear Channel's complaint with prejudice.  A case like this is

28  an embarrassment to the legal system and the attorneys who filed it.

## II.    ARGUMENT

### A.    Legal Standard

Dismissal of a complaint or cause of action is appropriate where it fails to state a claim. *Mathis v. Pacific Gas and Elec. Co.*, 75 F.3d 498, 502 (9th Cir. 1996). The court may dismiss a complaint as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). While allegations of material fact in the complaint are taken as true, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2159 (2007). If the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint. *See Feick v. Fleener*, 653 F.2d 69, 75 & n. 4 (2nd Cir. 1981); *United States ex rel. Sommer v. Dixon*, 524 F.Supp. 83, 85 (N.D.N.Y. 1981), *aff'd per curiam*, 709 F.2d 173 (2nd Cir.), *cert. denied*, 464 U.S. 857 (1983).

### B.    The Noerr-Pennington Doctrine Bars Clear Channel's Claims

Clear Channel's complaint is based entirely on the filing of an administrative appeal by Mr. Lee with the City of San Francisco. Complaint, ¶¶ 20, 23, 27. This is not an appropriate basis for a lawsuit. The *Noerr-Pennington* Doctrine immunizes Mr. Lee from incurring liability for conduct protected by the petitioning clause of the First Amendment. Although the *Noerr-Pennington* doctrine was originally promulgated to protect persons from liability under the Sherman Act based on their efforts to influence legislative or executive action (*see Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)), the protection has been expanded to apply to petitions to courts and administrative agencies, including municipal agencies. *See*, *e.g.*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (holding that the right to

petition encompasses petitioning conduct directed to state and federal administrative agencies and courts); *Marina Point Development Associates v. U.S.*, 364 F.Supp.2d 1144, 1147 (C.D. Cal. 2005) ("*Noerr-Pennington* doctrine immunizes petitioning activity directed at any branch of government-be it judicial, legislative, executive or administrative"); *Affordable Housing Development Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006) (petitioning conduct directed toward city housing authority protected under *Noerr-Pennington*).

Application of the *Noerr-Pennington* doctrine has also expanded to preclude claims other than those brought under the antitrust laws:

> The majority of courts who have considered the issue have concluded that the immunity is constitutional and rooted in the First Amendment right to petition....This Court agrees, and therefore holds that *Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity.

*Gen-Probe, Inc. v. Amoco Corp.,* 926 F.Supp. 948, 955-56 (S.D.Cal. 1996); *Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.*, 276 F.Supp.2d 1046, 1053 (E.D.Cal. 2003) (applying *Noerr-Pennington* doctrine in action for declaratory relief, noting that the Ninth Circuit "has long since rejected" the proposition that *Noerr* immunity applies only in antitrust context).

There is an exception to *Noerr* immunity where the petitioning action is "objectively baseless" and is therefore a sham in furtherance of wrongful conduct.[1]  *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60-61 (1993) (the presumption of immunity can be overcome only where the underlying lawsuit or petitioning activity "(1) is objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits, and (2) is brought with the specific intent to further wrongful conduct through the use [of] the governmental process – as opposed to the outcome of that process.").  This standard, however, is extremely difficult to meet, and Clear Channel has shown no basis for the exception.[2]

---

[1]   There are other exceptions to *Noerr-Pennington*, but none that would apply here, and Clear Channel has not even attempted to show that its complaint falls within any of them.

[2]   If the standard were not so high, any individuals or entities that chose to participate in the legal system could find themselves liable for doing nothing more than pursuing lawful avenues of appeal or litigation.  Thus, the standard of "objective baselessness" requires that there be no

(continued...)

Clear Channel fails to allege any facts whatsoever suggesting that the proceedings with the San Francisco Board of Appeals fall within the "sham" exception to *Noerr* immunity, let alone plead facts with the requisite specificity required if the immunity is to be overcome. *See Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976) (establishing a heightened pleading standard to overcome *Noerr* immunity and holding that "in any case, whether antitrust or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required."); *Boone v. Redevelopment Agency of San Jose,* 841 F.2d 886, 893 (9th Cir. 1988), *cert. denied,* 488 U.S. 965 (1988). ("it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply. Conclusory allegations are insufficient to strip them of their *Noerr-Pennington* protection" (citations omitted)).

Here, not only does Clear Channel fail to allege the "sham" litigation exception required for its complaint to survive, but even given leave to amend, it could not conceivably do so. As Clear Channel acknowledges in its complaint, Mr. Lee's appeal was successful. Complaint, ¶ 19. The fact that Mr. Lee won his appeal automatically precludes any attempt to assert the "sham" exception. "One cannot come before a court and argue that litigation that terminated in one's opponent's favor is 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.' *Nader v. The Democratic Nat. Committee*, --- F.Supp.2d ----, 2008 WL 2174238 *12 (D.D.C., May 27, 2008)*, quoting  Prof'l Real Estate Investors,* 508 U.S. at 61. "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Prof'l Real Estate Investors,* 508 U.S. at 61.

---

(...continued from previous page)

possible reasonable basis for bringing a claim.  Here, it is even more egregious, because Mr. Lee not only brought a reasonable appeal, but he won his appeal (Complaint, ¶ 19) – proving as a matter of law that his position was objectively reasonable.

1    Mr. Lee's filing of an appeal falls squarely within protected petitioning conduct, and no

2    basis for invoking the sham exception to *Noerr-Pennington* has been or can be asserted.  Mr. Lee

3    is immune from liability to Clear Channel for claims based upon his petitioning of the Board of

4    Appeals.  As all of Clear Channel's claims are based on nothing more than Mr. Lee doing that

5    which, under the First Amendment and *Noerr-Pennington*, he had every right to do, the Court

6    must dismiss Clear Channel's claims. *Manistee Town Center v. City of Glendale*, 227 F.3d 1090,

7    1095 (9th Cir. 2000) (upholding dismissal of complaint based on application of *Noerr* immunity);

8    *Franchise Realty Interstate Corp.*, 542 F.2d at 1086 (same).

9    **C.    Clear Channel's Claims Are Barred by California's Anti-SLAPP Laws**

10    Clear Channel's complaint also falls within the purview of California's Anti-Strategic

11    Litigation Against Public Participation ("anti-SLAPP") statute.  Cal. Code Civ. Pro. § 425.16.

12    This statute prohibits the filing of legal actions based on the lawful pursuit of a defendant's right

13    to petition or right of free speech, where such speech or petitioning activity is in connection with a

14    public issue.  Here, the anti-SLAPP laws require the dismissal of Clear Channel's complaint and

15    an award of costs and attorney's fees to Mr. Lee.

16    California's anti-SLAPP statute may be applied in federal court in diversity actions and to

17    pendent state law claims.  *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 63 F.Supp.2d

18    1127, 1130 (N.D.Cal. 1999).[3]  "If a defendant makes a special motion to strike based on alleged

19    deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a

20    motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.  If a

21    defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the

22    motion must be treated in the same manner as a motion under Rule 56 except that again the

23    attorney's fees provision of § 425.16(c) applies." *Rogers v. Home Shopping Network, Inc.*, 57

24    F.Supp.2d 973, 983 (C.D.Cal.1999).  Clear Channel brings its case in federal court based on the

25    _____

26    [3]    Certain provisions of the anti-SLAPP statute pertaining to the timing of the motion and
mandatory discovery stay pending resolution of the motion pose a substantive conflict with the

27    Federal Rules of Civil Procedure and are thus inapplicable in federal court. *Metabolife Intern.,
Inc. v. Wornick*, 264 F.3d 832, 845-6 (9th Cir. 2001). However, the provisions authorizing

28    dismissal of claims and awarding of attorney's fees to a prevailing defendant still apply. *Id.*

1  diversity of the parties. Accordingly, all of Clear Channel's claims are subject to § 425.16 and

2  may be dismissed on a motion brought under Rule 12(b)(6).

3      The anti-SLAPP statute authorizes a special motion to strike certain pleadings in a cause of

4  action based on any act of the defendant in furtherance of his or her right of petition or free

5  speech, under the federal or state constitutions, made in connection with a public issue. Cal. Code

6  Civ. Pro. § 425.16. A defendant bringing a special motion to strike a complaint under the anti-

7  SLAPP statute must make a prima facie showing that the challenged acts were taken in

8  furtherance of constitutional rights of petition or free speech in connection with a public issue, as

9  defined by the statute. *Id*.; *Ramona Unified School Dist. v. Tsiknas*, 135 Cal.App.4th 510, 518

10  (2005). Once the defendant has made this prima facie showing, the burden shifts to the plaintiff to

11  demonstrate a probability of prevailing on the challenged claims for those claims to survive

12  dismissal. §425.16(b); *Wilcox v. Superior Court*, 27 Cal.App.4th 809, 823-25 (1994), (disapproved

13  on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal.4th 53, 68, fn. 5 (2002)).

14  To meet this burden, a plaintiff must demonstrate that "the complaint is legally sufficient and

15  supported by a prima facie showing of facts to sustain a favorable judgment if the evidence

16  submitted by the plaintiff is credited." *Id* at 823. A defendant's anti-SLAPP motion should be

17  granted when a plaintiff presents an insufficient legal basis for the claims or "when no evidence of

18  sufficient substantiality exists to support a judgment for the plaintiff." *Id.*, citing *Carson v.*

19  *Facilities Dev., Co.,* 36 Cal.3d 830, 838-39 (1984). A defendant who prevails on a motion to strike

20  under the California anti-SLAPP statute is entitled to recover his or her attorney's fees. *New.Net,*

21  *Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1115 (C.D.Cal. 2004), citing *Pfeiffer Venice Props. v.*

22  *Bernard,* 101 Cal.App.4th 211, 216 (2002). An award is proper even if the anti-SLAPP motion is

23  granted only as to some of a plaintiff's claims. *Id.*, citing *ComputerXpress, Inc. v. Jackson,* 93

24  Cal.App.4th 993, 1120 (2001).

25      Here, the only conduct complained of by Clear Channel is Mr. Lee's filing of "an appeal of

26  the Removal Permit with the Board of Appeals (No. 07-075), seeking rescission of the Removal

27  Permit." Complaint, ¶¶ 18-19. It is indisputable that this act, on which Clear Channel bases all of

28

its causes of action, falls squarely within the activities protected under C.C.P. § 425.16.  Under the statute, protected conduct includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

C.C.P. § 425.16 (e).  There can be no doubt that the proceedings of the San Francisco Board of Appeals are "official proceedings" under the statute, such appeals being expressly authorized and governed by City and County of San Francisco Charter § 4.106 and City and County of San Francisco Business & Tax Regulations Code, Article 1, §§ 8, 8a, 9, 10, 11, 12, 13, 14, 15, 16, 29, 30 & 31. Further, California has long recognized the quasi-judicial nature of such proceedings. *Sommerfield v. Helmick,* 57 Cal.App.4th 315, 320 (1997) ("The exercise of discretion to grant or deny a license, permit or other type of application is a quasi-judicial function"); *Greif v. Dullea*, 66 Cal.App.2d 986, 1006-07 (1944) (San Francisco Board of Permit Appeals is a local board with discretionary powers in which judicial or quasi-judicial power was invested).  There can also be no doubt that Mr. Lee's petitioning conduct involved a public issue. "Under the plain terms of the statute it is the context or setting itself that makes the issue a public issue: all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106 1118-20 (1999), quoting *Braun v. Chronicle Publishing Co.*, 52 Cal.App.4th 1036, 1047 (1997).  In drafting the language of the anti-SLAPP statute, the legislature "*equated* a public issue with the authorized official proceeding to which it connects." *Id* (emphasis in original.)

Clear Channel's complaint is based entirely on an act in furtherance of Mr. Lee's right of petition or free speech.  Indeed, Mr. Lee's lawful (and successful) petitioning of the government is the very act about which Clear Channel complains.  Complaint, ¶ 19.  Clear Channel's claims are

thus subject to C.C.P. § 425.16.[4]  Accordingly, the burden is upon Clear Channel to "demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox*, 27 Cal.App.4th at 823.  If either of these requirements is not met, the motion to strike must be granted.  *Id*.  Here, Clear Channel cannot meet these requirements, and its causes of action must be dismissed and Mr. Lee awarded attorney's fees and costs.[5]

### D.    Clear Channel Fails To State A Claim For Breach of Contract

Plaintiff fails to state a cause of action for breach of contract.  First, Plaintiff has failed to allege any facts from which a breach of the lease agreement can reasonably be inferred, and even if Mr. Lee's conduct as described in the complaint could be construed as constituting a breach of the agreement, such conduct is immune under California's litigation privilege.  Second, CCO has failed to allege any cognizable damages it suffered as a result of the supposed breach, and a breach of contract without damage is not actionable.

### 1.    Clear Channel Fails to Allege the Element of Breach

Under California law, in order to state a breach of contract claim, a plaintiff must show (1) the existence of a contract, (2) its performance or excuse from performance under the contract, (3) the defendant's material breach of the contract, and (4) damages arising from the breach.  *See McKell v. Washington Mutual,* 142 Cal.App.4th 1457, 1489 (2006); *Smith v. Royal Mfg. Co.,*185

---

[4]    Presenting its claims as a "breach of contract" does not change the nature of Clear Channel's case, which seeks to attach liability to Mr. Lee's constitutionally-protected conduct.  A plaintiff cannot avoid operation of the anti-SLAPP statute by characterizing an action as a "garden variety breach of contract [or] fraud claim" when in fact the liability claim is based on protected speech or conduct. *Navellier v. Sletten*, 29 Cal.4th 82, 90-92 (2002). "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability-and whether that activity constitutes protected speech or petitioning." *Id.* at 92 (emphasis in original.)

[5]    Should the court determine that some or all of Clear Channel's claims are adequately pled, Defendant's motion pursuant to the California anti-SLAPP statute should be considered brought under F.R.C.P. 56, and after a reasonable opportunity for discovery, plaintiff should be compelled to submit admissible evidence constituting a prima facie showing of facts to sustain a favorable judgment on its claims. *Globetrotter Software, Inc.,* 63 F.Supp.2d at 1130; *Wilcox*, 27 Cal.App.4th  at 823-25, 830.

---

1   Cal.App.2d 315, 328 (1960). "Under a contractual theory of liability, the "wrong" that is an

2   essential element of the claim is the defendant's breach." *Church v. Jamison*, 143 Cal.App.4th

3   1568, 1582 (2006).  Where a cause of action arises out of a contract that has been attached to the

4   complaint, and where the contract shows on its face that the relief prayed for is not merited,

5   granting a motion to dismiss the claim is both justified and appropriate.  *Palda v. General*

6   *Dynamics Corp.*, 47 F.3d 872, 876 (7th Cir. 1995); *Jacksonville Newspaper Printing Pressmen and*

7   *Assistants' Union No. 57 v. Florida Publishing Co.*, 340 F.Supp. 993, 995 (M.D.Fla.1972), aff'd,

8   468 F.2d 824 (5th Cir.), cert. denied, 411 U.S. 906 (1973).

9        Clear Channel peppers its complaint with claims that Mr. Lee's acts constituted a breach of

10   the lease, that Mr. Lee denied Clear Channel's rights under the lease, that Mr. Lee "repudiated his

11   obligations" under the lease, and similar synonyms for "breach."  These assertions, however, are

12   nothing more than unsupported legal conclusions to which no presumption attaches for purposes

13   of a motion to dismiss.  *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994) (the

14   court is not required to accept legal conclusions cast in the form of factual allegations, if those

15   conclusions cannot reasonably be drawn from the facts alleged) (citing *Papasan v. Allain,* 478

16   U.S. 265, 286 (1986)).   Here, the only <u>act</u> of which Clear Channel complains of is Mr. Lee's

17   filing of an administrative appeal.  Complaint, ¶ 19.  Clear Channel does not allege why or how

18   this conduct constitutes a breach, and nor could it: the lease agreement is silent with respect to

19   Board of Appeals matters or similar proceedings.  It is plain from the agreement that Mr. Lee did

20   not covenant to forbear from challenging invalid, unlawful, or unauthorized permits. As the only

21   act complained of by Clear Channel is plainly not a breach of the lease, Clear Channel fails to

22   allege a cognizable breach to support its contract cause of action. *Palda*, 47 F.3d at 876.

23        Even Clear Channel's legal interpretations are not supported by the plain language of the

24   lease.  The lease authorizes Clear Channel to obtain permits for the "*construction and*

25   *maintenance* of Lessee's signs."  Complaint, Ex. A, ¶ 4.  However, as Clear Channel concedes in

26

27

28

1    its Complaint, the permit it unlawfully obtained was for the *removal* of the sign structure. [6]

2    Complaint, ¶ 15.  There is no right in the lease to obtain permits for the *removal* of the sign

3    structure, so the filing of the appeal could not be in derogation of such a right.[7]   Based upon this,

4    Clear Channel's complaint does not allege a cognizable breach, and its contract claim must be

5    dismissed.

**2.    The Litigation Privilege Bars Clear Channel's Claim for Breach**

7           Even if Clear Channel could base a "breach" of contract based on Mr. Lee's petitioning of

8    the Board of Appeals, its cause of action would nonetheless be barred by California's Litigation

9    privilege.  Cal. Civ. Code Section 47 prohibits publications and broadcasts made in legislative and

10   judicial proceedings from being the basis for liability.  The privilege applies "to any

11   communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

12   participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some

---

14        [6]   If Clear Channel thought that the lease required Mr. Lee to authorize the issuance of the
     removal permit, then it should have requested such authorization, and if it were not forthcoming,
15   sought an order for specific performance *before* obtaining the permit.  Instead, it surreptitiously
     obtained the permit without authorization and proceeded with the removal before the mandatory
16   15 day waiting period of appeal had expired.  As a consequence, this was one of the bases for the
     Board of Appeal's ruling.  Request for Judicial Notice ("RJN"), Exhibit 1, ¶ 24 ("We further find
17   and conclude that permit holders who undertake work during the 15-day period when a building
     permit can be appealed proceed at their own peril should the permit be overturned.").  Clear
18   Channel cannot now complain that its failure to seek and obtain authorization constitutes a
     breach and ensuing liability on Mr. Lee's part.

19        [7]   Perhaps Clear Channel believes – though it has not alleged – that despite the explicit
20   authorization to obtain maintenance and construction permits in the lease, the authorization to
     obtain removal permits is implied in the lease.  Even if alleged, this too would be unavailing.  As
21   the Board of Appeals found, "Section 106.3.1.6 of the San Francisco Building Code requires
     building permits to be issued only to an owner or an authorized agent of the owner of the real
22   property." This requirement is part of the lease agreement.  '[A]ll applicable laws and ordinances
     in existence when the agreement is made become a part thereof as fully as if incorporated by
23   reference." *Department of Industrial Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084,
     1094 (1997).  Since the ordinance, as incorporated into the lease, gave only Mr. Lee or the person
24   of his choosing authorization to obtain the removal permit, an "implied" authorization will not be
     found.  "[I] implied terms should never be read to vary express terms." *Carma Developers (Cal.),*
25   *Inc. v. Marathon Development California, Inc*., 2 Cal.4th 342, 374 (1992), citing *Tanner v. Title*
     *Ins. & Trust Co.*, 20 Cal.2d 814, 824 (1942).  Furthermore, such an interpretation would belie the
26   express terms of the lease itself.  Other provisions in the lease reference "removal" of signs, such
     as Section 6.  Complaint, Ex. A.  This shows that Clear Channel, whose predecessor drafted the
27   lease and against whom the lease is construed, expressly referenced "removal" when it so
     intended, and its limitation of permits to "construction and maintenance" should not imply the
28   inclusion of other types of permits.

---

1    connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal.3d 205, 212 (1990).

2    Because state law "supplies the rule of decision," the privilege is applicable to the causes of action

3    in this case.  Fed.R.Evid. § 501.

4        Although principally applied to tort claims, California courts have held that the litigation

5    privilege may be applied to contract cases. "[W]hether the litigation privilege applies to an action

6    for breach of contract turns on whether its application furthers the policies underlying the

7    privilege." *Wentland v. Wass*, 126 Cal.App.4th 1484, 1492 (2005), citing *Laborde v. Aronson,* 92

8    Cal.App.4th 459 (2001) (applying privilege to breach of contract claims) and *Pollock v. Superior

9    Court*, 229 Cal.App.3d 26 (1991) (same). "[T]he purpose of the litigation privilege is to ensure

10   free access to the courts, promote complete and truthful testimony, encourage zealous advocacy,

11   give finality to judgments, and avoid unending litigation." *Id.,* citing *Silberg* 50 Cal.3d at 214.

12   Since the basis for Clear Channel's claim is Mr. Lee's access to and redress from a quasi-judicial

13   body, the litigation privilege should apply.  Therefore, pursuant to Cal. Civ. Code § 47, Clear

14   Channel's contract cause of action must be dismissed.

15           **3.  Clear Channel Fails To Allege Any Cognizable Damages**

16       Damages are a necessary element of an action for breach of contract.  *McKell,* 142

17   Cal.App.4th  at 1489; *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal.App.2d 506,

18   511 (1967) ("A breach of contract without damage is not actionable.").  The only damages

19   claimed here are:  the Board of Appeal's rescission of Clear Channel's Removal Permit,[8] "injury"

20

21   _____

22       [8]    The building permit records, of which this Court may take judicial notice, make
     plain that the Board of Appeals decision *revised* the Removal Permit filed by Clear Channel in
23   order to allow Mr. Lee to reconstruct the billboard.  It did not result in a *rescission* of the permit,
     as Clear Channel claims in its Complaint.  RJN, Ex. 1, p. 9 ("Based on the above Findings, the
24   Board of Appeals grants the Appeal and authorizes the Building Permit to be *revised* to allow
     reconstruction of general advertising signage at the Property in the same size and location as
25   previously existed.").  Yet even if this were not so, Clear Channel would still have been deprived
     of nothing, because it had no vested property rights in the permit.  The Board of Appeal's decision
26   was based, in part, on the permit having been invalidly issued to Clear Channel.  RJN, Ex. 1.  In
     California, applicants for permits "obtain 'vested' rights only when a *valid* permit issues and the
27   permit holder undertakes substantial construction in reliance on the permit." *Covenant Media of
     Cal., L.L.C. v. City of Huntington Park, Cal.*, 377 F.Supp.2d 828, 838 (C.D.Cal. 2005) (citing
28   cases) (emphasis added).  Since the permit was not validly issued, Clear Channel never had
                                                                          (continued...)

1  to Clear Channel's good will, and unspecified "substantial expenses" incurred as a result of Mr.

2  Lee's alleged breach of contract. Complaint, ¶ 24.  In fact, Clear Channel's Complaint establishes

3  that none of these constitute actionable damages.

4          "Damages awarded to an injured party for breach of contract 'seek to approximate the

5  agreed-upon performance.'" *Lewis Jorge Const. Management, Inc. v. Pomona Unified School*

6  *Dist.*, 34 Cal.4th 960, 967 (2004), quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7

7  Cal.4th 503, 515 (1994). "The goal is to put the plaintiff 'in as good a position as he or she would

8  have occupied' if the defendant had not breached the contract." *Id.*, quoting 24 Williston on

9  Contracts (4th ed.2002) § 64:1, p. 7.  The injured party's damages cannot, however, exceed what it

10 would have received if the contract had been fully performed on both sides. *Id.* at 968, citing Cal.

11 Civ. Code, § 3358.

12          Clear Channel claims that had Mr. Lee decided to refrain from appealing its permit, the

13 conditions of the lease agreement would have been met.  Complaint, ¶¶ 18-19.  In its complaint,

14 however, Clear Channel admits that prior to Mr. Lee's filing of the permit appeal, Clear Channel

15 completed the demolition and removal of the sign and sign structure initially authorized by permit.

16 Complaint, ¶¶ 16-17.  Assuming *arguendo* that the lease authorized Clear Channel to obtain the

17 removal permit, Clear Channel's own allegations demonstrate that it in fact received the full

18 benefit it was due pursuant to that agreement.  That Mr. Lee later filed an appeal seeking revision

19 of the permit to allow reconstruction of the signs and structures has no impact on Plaintiff.  Clear

20 Channel would find itself in exactly the same position – having removed the signs it claims to own

21 – whether Mr. Lee decided to pursue the appeal or not.  Since Clear Channel in fact received

22 everything it would have received had Mr. Lee not sought revisions to the permit, Clear Channel

23 cannot make any claim for damages based upon the Board of Appeal's revision of the permit.

24 *Lewis Jorge,* 34 Cal.4th at 967-68.

25 _____

26          (...continued from previous page)
   property rights in the permit, and whether revised or rescinded, the change to the permit cannot
27 constitute damages.

28

1    Similarly, because the lease terminated before the appeal was even filed and Clear Channel

2    and Mr. Lee had no ongoing business relationship at that time, Clear Channel cannot assert a

3    claim for loss of good will.  Complaint, ¶¶ 13, 15, 18 (alleging that lease terminated on May 14,

4    2007 and Mr. Lee did not file appeal until May 21, 2007).  "Good will" is defined as a business's

5    "expectation of continued public patronage."  Cal. Bus. & Prof. Code § 14100.  Because the lease

6    terminated, Clear Channel had no expectation of future sales on the sign space on Mr. Lee's

7    property.[9]  In such circumstances, good will damages are unavailable.  See, e.g., *California*

8    *Beverage & Supply Co. v. Distillers Distributing Corp.*, 158 Cal.App.2d 758, 765-66 (1958)

9    (where manufacturer defendant allegedly breached contract when it failed to deliver product to

10    distributor in February, fact that distribution agreement would expire in March precluded good

11    will damages for the breach.  "It is obvious that plaintiff could have no expectation of continued

12    public patronage in connection with Calvert products since it would no longer be a distributor of

13    Calvert …").[10]

14    Clear Channel's vague allegation of "substantial expenses" incurred "to counteract the

15    aforesaid breaches" also fails.  Since Clear Channel obtained everything it was entitled to under

16    the lease (even under its own interpretation) by the time the appeal was filed, any "substantial

17    expenses" were incurred voluntarily and without need.  "It is well established that a party injured

18    by breach of contract is required to mitigate his or her damages. Accordingly, that person cannot

19    recover damages for detriment which he or she could have avoided by reasonable effort." *Royal*

20    *Neckwear Co. v. Century City, Inc.*, 205 Cal.App.3d 1146, 1154 (1988), quoting *Sackett v.*

21    *Spindler* , 248 Cal.App.2d 220, 238-39 (1967.)  Since the Complaint establishes that there were no

22    damages that Clear Channel suffered as a result of the alleged breach, incurring "substantial

23

24    [9]    Indeed, Clear Channel acknowledges that it had over nine months of notice that its lease
would terminate – at the latest – by May 14, 2007, and as such, cannot have had a reasonable

25    expectation of selling advertising space on signs located at Mr. Lee's property after that date.
Complaint, ¶ 14.

26

27    [10]    To the extent Clear Channel is suggesting that it suffered damages to "good will" as a
result of losing its opposition to Mr. Lee's appeal, that is clearly not actionable damage.
Otherwise, every losing party in every case would suffer such damage.

28

MEMORANDUM ISO MOTION TO DISMISS AND MOTION TO STRIKE (Case No.  08-CV-2955 PJH)
-15-

1   expenses" to counteract the breach is inherently unreasonable.  Such expenses cannot be recovered

2   as damages, and Clear Channel's contract claim should be dismissed.

3           **E.      Clear Channel Fails To State A Claim for Promissory Estoppel**

4           Clear Channel's cause of action for promissory estoppel is duplicative of its claim for

5   breach contract and must be dismissed. "Promissory estoppel is a doctrine which employs

6   equitable principles to satisfy the requirement that consideration must be given in exchange for the

7   promise sought to be enforced." *US Ecology, Inc. v. State,* 129 Cal.App.4th 887, 901-02 (2005),

8   quoting *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority,* 23 Cal.4th

9   305, 310 (2000); *Toscano v. Greene Music,* 124 Cal.App.4th 685, 692 (2004). The doctrine of

10  promissory estoppel provides a substitute for consideration to allow enforcement of a promise.

11  *Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal.App.4th 299, 312 (1997). "Promissory

12  estoppel was developed to do rough justice *when a party lacking contractual protection* relied on

13  another's promise to its detriment." *Kajima/Ray Wilson v. Los Angeles County Metropolitan*

14  *Transp. Authority,* 23 Cal.4th 305, 315 (2000) (emphasis added.)  In a promissory estoppel action,

15  the plaintiff must prove all of the necessary elements of a contract except for the requirement of

16  consideration. *U.S. Ecology,* 129 Cal.App.4th at 903.  "[P]romissory estoppel is distinct from

17  contract in that the promisee's justifiable and detrimental reliance on the promise is regarded as a

18  substitute for the consideration required as an element of an enforceable contract." *Signal Hill*

19  *Aviation Co. v. Stroppe*, 96 Cal.App.3d 627, 640 (1979).

20          Where there is consideration or bargained-for performance by the party asserting the cause

21  of action, however, the claim must fail:

22          the only reliance which can make the promisor's failure to perform actionable is the
            promisee's doing what was requested. If that reliance was detrimental, it would constitute
23          consideration. If it was not detrimental, it would not constitute consideration; and since
            detrimental reliance is an essential feature of promissory estoppel, that doctrine could not
24          be invoked to make the promisor liable. In other words, where the promisee's reliance
            was bargained for, the law of consideration applies; and *it is only where the reliance was*
25          *unbargained for that there is room for application of the doctrine of promissory estoppel*.

26

27  *Youngman v. Nevada Irrigation Dist.,* 70 Cal.2d 240, 249-50 (1969), quoting *Healy v. Brewster,*

28  59 Cal.2d 455, 463 (1963) (internal citations omitted) (emphasis added); *see also Walker v. KFC*

*Corp.,* 728 F.2d 1215, 1219-20 (9th Cir.1984); *Raedeke v. Gibraltar Savings & Loan Assn.,* 10 Cal.3d 665, 673, (1974).

Thus, where a plaintiff's "only claimed reliance is performance of the act bargained for, [promissory estoppel] is unavailable." 1 Witkin, Summary of California Law: Contracts § 247 (10th ed. 2005); *Money Store Investment Corp. v. Southern California Bank*, 98 Cal. App. 4th 722, 731 (2002), as modified, (May 29, 2002) ("when either adequate consideration existed, or it was rendered moot by the performance, by the party seeking to assert a promissory estoppel, of its obligations under the agreement, a cause of action for promissory estoppel is superfluous.").  In short, promissory estoppel is applicable only in the absence of an enforceable contract.

Clear Channel's allegations demonstrate that it relied on a requested or "bargained for" performance and that there was consideration for the performance.  Complaint, Exs. A, B, ¶ 10. As the basis for its promissory estoppel claim, Clear Channel has alleged the existence of a contract (the lease) and has alleged that it fully performed under the lease. Complaint, Exs. A, B, ¶¶ 10, 22.  The only "promise" it alleges in its cause of action for promissory estoppel is apparently a promise *implied* by various "acknowledgments" made in the lease.  Complaint, ¶¶ 11, 26.  The supposed "breach" of this promise was the denial of Clear Channel's alleged "contractual" rights. Complaint, ¶ 27.  Clear Channel's cause of action for promissory estoppel is in fact a cause of action for the enforcement of a bargained-for contract.   As such, it is superfluous and redundant to its breach of contract claims, and the doctrine of promissory estoppel is inapplicable.  *See, e.g., Mike Nelson Co., Inc. v. Hathaway*, 2005 WL 2179310 *3, n.4  (E.D. Cal. 2005) (granting defendants' motion to dismiss promissory estoppel cause of action where plaintiff had alleged existence of a bargained-for contract as the basis for its claim); *Money Store Investment Corp.*, 98 Cal. 4th at 731 (granting summary adjudication to defendant on plaintiff's claim of promissory estoppel where plaintiff either gave consideration or performed under the contract).  Accordingly, Clear Channel's estoppel claim must be dismissed.

**F.    Clear Channel Lacks Jurisdiction For Its Declaratory Relief Claim**

Clear Channel's declaratory relief claim is nothing more than an invitation to the Court to review and reverse the decision of the San Francisco Board of Appeals.  In so doing, Clear

1   Channel is effectively requesting that this Court exercise appellate jurisdiction over the San

2   Francisco Board of Appeals.  Exercise of such jurisdiction would be improper and in violation of

3   the *Rooker-Feldman* doctrine.  Accordingly, this Court should dismiss Clear Channel's

4   declaratory relief cause of action, or, at the very least, strike those portions of the pleading which

5   seek a judgment on matters "inextricably intertwined" with the issues decided by the Board of

6   Appeals which, if granted, would effectively overrule the tribunal's ruling.

7           The Board of Appeals determined that Clear Channel failed to demonstrate "apparent

8   authority" to obtain the removal permit; that "Section 106.3.1.6 of the San Francisco Building

9   Code requires building permits to be issued only to an owner or an authorized agent of the owner

10  of the real property;" and that Clear Channel was not Mr. Lee's authorized agent.  RJN, Ex. 1.

11  The Board declined to interpret the lease agreement, basing its ruling on other grounds without the

12  need to reach interpretation of the contract.[11]  Clear Channel clearly believes that the Board of

13  Appeals should have considered the lease, and based upon it, ruled in its favor.[12]  Indeed, at

14  approximately the same time Clear Channel filed this case, it filed a petition for a writ of

15  mandamus in the California state courts arguing this very point.  RJN, Ex. 2.

16

17  _____

18      [11]  For example, the Board found that Clear Channel's violation of the permit procedures
    was a basis for its decision.  RJN, Ex. 1, ¶ 24 (noting Clear Channel's failure to abide by the 15
19  day appeal period before commencing destruction and removal of the billboard).  It also found
    that the sign structure was not entirely destroyed or removed by Clear Channel (despite the
20  conglomerate's best efforts), and that this authorized the Board to revise the permit "to
    accomplish alterations required to replace the signboard and seismically upgrade its structural
21  elements."  RJN, Ex. 1, ¶ 25.  As a further independent basis for its decision, and after hearing
    the testimony of numerous other property owners, the Board noted the "heavy-handed business
22  practices" by sign companies in San Francisco during "lease renewal negotiations" and ruled that
    it would not approve a building permit that "would encourage and reward such practices."  RJN,
23  Ex. 1, ¶ 26.

24      [12]  The Board of Appeals did consider Clear Channel's lease, but it did not rely upon it in
    reaching its ruling.  In *dicta* discussing its decision not address the lease, the Board of Appeals
25  noted that "we question how a form lease which predates the Planning Code amendments upon
    which Clear Channel relies, could constitute enforceable, 'bargained for,' contract terms."  RJN,
26  Ex. 1, ¶ 22.  The Board of Appeal's concern was well-founded. '[A]ll applicable laws and
    ordinances in existence when the agreement is made become a part thereof as fully as if
27  incorporated by reference." *Department of Industrial Relations v. UI Video Stores, Inc.*, 55
    Cal.App.4th 1084, 1094 (1997). "[A] subsequent change in the law will not render unenforceable a
28  previously created contractual right." *Moran v. Harris*, 131 Cal.App.3d 913, 921 fn.6 (1982).

1    Having failed to persuade the Board of Appeals to consider the lease and rule in its favor,

2    Clear Channel now brings the contract before this Court under the guise of an action for

3    "declaratory relief" and prays for the Court to interpret the contract and issue a declaratory

4    judgment that would effectively overrule the Board of Appeals.  In particular, Clear Channel prays

5    for an order declaring:

6
        (b) Clear Channel has the right to voluntarily remove (or to not remove) the signs,
7        structures and improvements at its sole discretion; (c) Clear Channel has the right to
        obtain the Removal Permit; (d) the Removal Permit was the property of Clear Channel;
8        (e) Clear Channel is not liable to Defendant for obtaining the Removal Permit pursuant to
        its rights and voluntarily removing Clear Channel's signs, structures and improvements
9        pursuant to the Removal Permit.

10
11    Complaint, Prayer, ¶ 2. Granting Clear Channel the relief it seeks would amount to concluding

12    that the decision of the Board of Appeals was incorrect, and reversing it.  That Clear Channel

13    disagrees with the Board of Appeal's ruling and believes it erred, however, is not an adequate

14    basis upon which to invite this court to reverse it.

15        The *Rooker-Feldman* doctrine recognizes that Congress's grant to federal district courts of

16    jurisdiction to entertain suits raising federal questions, "is a grant of original jurisdiction, and does

17    not authorize district courts to exercise appellate jurisdiction over state-court judgments, which

18    Congress has reserved to th[e United States Supreme] Court."  *Verizon Maryland Inc. v. Public*

19    *Service Commission,* 535 U.S. 635, 644 n. 3 (2002).  *See generally District of Columbia Court of*

20    *Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416,

21    44 (1923). The doctrine applies to "state-court losers complaining of injuries caused by state-court

22    judgments rendered before the district court proceedings commenced and inviting district court

23    review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544

24    U.S. 280, 284 (2005). "[F]ederal district courts do not have jurisdiction over claims that have

25    already been decided, or that are 'inextricably intertwined' with issues that have already been

26    decided, by a state court." *Bridgewater Operating Corp. v. Feldstein,* 346 F.3d 27, 29 (2d Cir.

27    2003) (per curiam). To the extent that a plaintiff's claim can succeed only by arguing that the state

28    court "wrongly decided the issues before it," the plaintiffs are seeking to attack the judgment and

1   the doctrine deprives the court of jurisdiction. *See Charchenko v. City of Stillwater,* 47 F.3d 981,

2   983 (8th Cir. 1995) (holding that a claim is "inextricably intertwined" under *Rooker-Feldman*

3   when the claim "succeeds only to the extent that the state court wrongly decided the issues before

4   it [or] if the relief requested ... would effectively reverse the state court decision or void its

5   ruling"). The doctrine applies even where the attack on the state court judgment is indirect.

6   *Calvert v. Safranek,* 209 Fed.Appx. 816, 819 (10th Cir. 2006) (holding that *Rooker-Feldman*

7   applied because court could not recognize plaintiff's malicious prosecution claim without directly

8   or indirectly overturning state court judgments he protested).

9        In this case, the doctrine prevents challenges to the determinations of the Board of

10  Appeals. In *Feldman,* the Court held that even where the a decision is made by a state entity that is

11  not properly characterized as a court, reviewability by the federal district courts is not based on the

12  "'character of the body'" but the "'character of the proceedings.'" *Feldman*, 460 U.S. at 477, 103

13  S.Ct. 1303 (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226 (1908).  Following the

14  Court's decision in *Feldman*, it has been repeatedly held that decisions by quasi-judicial

15  administrative bodies acting in a judicial capacity may also come under the *Rooker -Feldman* rule.

16  *Rooker-Feldman* may apply to "agencies that are appropriately characterized as arms of the state

17  judiciary *qua* judiciary, either because they exercise powers that are inherent to the judiciary, or

18  because the state has provided mechanisms for judicial review of their determinations that

19  distinguish those determinations from other types of state administrative action." *Mitchell v.*

20  *Fishbein***,** 377 F.3d 157, 166 (2nd Cir. 2004.)  See also *Thomas v. Kadish,* 748 F.2d 276 (5th

21  Cir.1984), *cert. denied,* 473 U.S. 907 (1985) (applying *Rooker-Feldman* to bar federal court

22  claims and holding that "Board of Law Examiners proceedings may be analogized to the function

23  of a special master in taking actions of an "essentially judicial nature"); *Allstate Insurance Co. v.*

24  *West Virginia State Bar,* 233 F.3d 813 (4th Cir.2000) (ruling that the *Rooker-Feldman* doctrine

25  barred district court review of the determination by a state bar committee that an insurance

26  company had engaged in the unauthorized practice of law).

27        As discussed *supra*, the proceedings in the Board of Appeals are, as a matter of California

28  law, quasi-judicial or judicial in nature. See *Sommerfield v. Helmick* 57 Cal.App.4th 315, 320

---

1    (1997); *Greif v. Dullea*, 66 Cal.App.2d 986, 1006-07 (1944).  See also, Cal. Code Civ. Pro. Sec. §

2    1094.5 (concerning judicial review of inferior tribunals). Accordingly, *Rooker-Feldman* should

3    apply to the Board's decisions that Clear Channel challenges in this case.  Indeed, the doctrine has

4    been applied in situations with many similarities to the present dispute.  See *RPD Long Beach v.*

5    *Tranter-Hare Inv. Bldg. Corp.***,** 2008 WL 269444, *4 (S.D.Ohio, 2008) (*Rooker-Feldman* barred

6    federal declaratory relief action regarding the validity of easement agreement after zoning board,

7    unable to determine validity of agreement, denied zoning approval for development of parcel.

8    "Plaintiff is essentially appealing the denial of its development application by Sycamore Township

9    to this Court.").

10        If the Court finds the *Rooker-Feldman* doctrine inapplicable, Mr. Lee respectfully requests

11   that the Court abstain from hearing Clear Channel's declaratory relief claims pursuant to the

12   abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, which

13   hold that a federal court should abstain from hearing a claim that would interfere with ongoing

14   state proceedings.  *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 505 F.3d 860,

15   872 (9th Cir.2007.) Although *Younger* dealt with ongoing state criminal proceedings, the

16   abstention doctrine articulated therein has been extended to civil actions. See, *Middlesex County*

17   *Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432  (1982) ("The policies underlying

18   *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are

19   involved."). "The Supreme Court has explained that the "importance of the state interest in the

20   pending state judicial proceedings and in the federal case calls *Younger* abstention into play," and

21   that "[s]o long as the constitutional claims of respondents can be determined in the state

22   proceedings and so long as there is no showing of bad faith, harassment, or some other

23   extraordinary circumstance that would make abstention inappropriate, the federal courts should

24   abstain." *Equity Lifestyle Properties, Inc.*, 505 F.3d at 872, quoting *Middlesex,* 457 U.S. at 435.

25        There can be no dispute that the issues raised by Clear Channel's claim for declaratory

26   relief are currently before the courts of California and implicate important state interests.  Clear

27   Channel's writ challenges, among other things, the Board of Appeal's exercise of discretion in

28   receiving and considering evidence, the interpretation of San Francisco Municipal Code Section

1  604(h), and the meaning and scope of discretionary authority conferred on the Board of Appeals

2  by the San Francisco Business and Tax Code Article 1, Sec. 26.  RJN, Ex. 2.  It was on the basis

3  of these issues that the Board of Appeals determined that Clear Channel lacked the right to obtain

4  the Removal Permit and issued its revision - determinations that Clear Channel now invites this

5  Court to reverse.  *Younger* abstention is appropriate under these circumstances.

6

7  **G.    Clear Channel's Prayer for Attorney's Fees Must Be Stricken**

8       Under Federal Rule of Civil Procedure 12(f), a party may move to strike "any redundant,

9  immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). This includes striking any

10  part of the prayer for relief when the relief sought is not recoverable as a matter of law. *Rosales*

11  *v. Citibank, Federal Sav. Bank*, 133 F.Supp.2d 1177, 1180 (N.D.Cal. 2001), citing  *Bureerong v.*

12  *Uvawas*, 922 F.Supp. 1450, 1479 n. 34 (C.D.Cal.1996).  Clear Channel's fourth prayer for relief

13  is for "attorney's fees and costs of suit incurred herein."  Unless a contract or statute provides

14  otherwise, each party to a lawsuit must pay its own attorney fees. Cal. Code Civ. Pro., § 1021.

15   Clear Channel is not entitled to attorney's fees on its causes of action, unless the lease sued upon

16  "specifically provides" for them. Cal. Civ. Code § 1717. Since the lease does not contain any

17  attorney's fee provisions, express or implied, the relief sought is not recoverable and should be

18  stricken from the prayer.  Complaint, Exs. A, B.

**III.    CONCLUSION**

19       Based on all of the foregoing, Mr. Lee respectfully requests that this Court dismiss Clear

20  Channel's complaint in its entirety with prejudice.

21

22  DATED:  August 6, 2008              LUKENS LAW GROUP
                                        WILLIAM M. LUKENS
23                                      JENNIFER L. JONAK
24
                                        By:  ____/s/ Jennifer L. Jonak_____
25                                           Jennifer L. Jonak
26                                           Attorneys for Defendant Cheol Hoon Lee

27

28