LUKENS LAW GROUP
WILLIAM M. LUKENS (SBN 037196)
JENNIFER L. JONAK (SBN 191323)
One Maritime Plaza, Suite 1600
San Francisco, CA 94111
Telephone: (415) 433-3000
Facsimile: (415) 781-1034

Attorneys for Defendant Cheol Hoon Lee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CLEAR CHANNEL OUTDOOR, INC., a
Delaware Corporation,

        Plaintiff,

    v.

CHEOL HOON LEE, an individual,

        Defendant.

CASE NO. 08-CV-2955 PJH

**REPLY IN SUPPORT OF
DEFENDANT LEE'S MOTION TO
DISMISS, MOTION TO STRIKE
AND MOTION FOR ANTI-SLAPP
RELIEF**

Date: September 17, 2008
Time: 9:00 a.m.
Dept.: Courtroom 3, 17th Floor
Judge: The Hon. Phyllis Hamilton

1

## <u>TABLE OF CONTENTS</u>

2

3

4    I.   INTRODUCTION………………………………………………………....…1

5    II.  ARGUMENT…………………………………………………………………...1

6         A.   Clear Channel Fails To State A Claim For Breach of Contract…………..1

7         B.   California's Litigation Privilege Bars Clear Channel's Claims……………3

8         C.   Clear Channel Has Not Alleged Any Cognizable Damages……………...5

9
     D.   Clear Channel Fails to State A Claim for Promissory Estoppel………….7
10

11        E.   The *Rooker-Feldman* Doctrine Bars CCO's Declaratory Relief Claim…..9

12        F.   Principles of the *Noerr-Pennington* Doctrine Bar Clear Channel's
              Claims…………………………………………………………………11
13

14        G.   Clear Channel's Complaint is Barred by Anti-SLAPP……….………12

15   III. CONLCUSION……………………………………………………………..15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*1100 Park Lane Associates v. Feldman*,
4
    160 Cal.App.4th 1467 (2008)……………………………………………………..4

5

*Action Apartment Assn., Inc. v. City of Santa Monica*,
6
    41 Cal.4th 1232 (2007)……………………………………………………………3

*Allstate Insurance Co. v. West Virginia State Bar*,
7
    233 F.3d 813 (4th Cir.2000)………………………………………………………9

*American Nat. Red Cross v. United Way California Capital Region*,
8
    2008 WL 2302188 (E.D.Cal. 2008)……………………………………………...14

9

*C & K Engineering Contractors v. Amber Steel Co.*,
10
    23 Cal.3d 1 (1978)…………………………………………....…………….8-9

11

*California Beverage & Supply Co. v. Distillers Distributing Corp.*,
    158 Cal.App.2d 758 (1958)………………………………………………………6

12

*California Motor Transport Co. v. Trucking Unlimited*,
13
    404 U.S. 508 (1972)……………………………………………………………...11

14

*Calvert v. Safranek*,
    209 Fed.Appx. 816 (10th Cir. 2006)……………………………………………...10

15

*Car Carriers, Inc. v. Ford Motor Co.*,
16
    745 F.2d 1101 (7th Cir.1984)……………………………………………………..5

17

*Charchenko v. City of Stillwater*,
    47 F.3d 981 (8th Cir.1995)………………………………………………………10

18

*Contessa Food Prods. v. Lockpur Fish Processing Co.*,
19
    2003 U.S. Dist. LEXIS 26682 (C.D. Cal. 2003)………………………………15

20

*Davric Maine Corp. v. Rancourt*,
    216 F.3d 143 (1st Cir. 2000)…………………………………………………...11

21

*District of Columbia Court of Appeals v. Feldman*,
22
    460 U.S. 462 (1983)……………………………………………………………9

23

*Drake v. Martin*,
    30 Cal.App.4th 984 (1994)……………………………………..………………2

24

*Evans v. Unkow*,
25
    38 Cal.App.4th 1490 (1995)……………………………………………………14

26

*Fabbrini v. City of Dunsmuir*,
27
    544 F.Supp.2d 1044 (E.D. Cal. 2008)…………………………………………14

28

*Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,*
    410 F.3d 17 (1st Cir. 2005)……………………………………………………10

*Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n,*
    493 U.S. 411 (1990)……………………………………………………...11

*Feick v. Fleener,*
    653 F.2d 69 (2nd Cir. 1981)……………………………………………2

*Foothill Federal Credit Union v. Superior Court,*
    155 Cal.App.4th 632 (2007)……………………………………………4

*Gautier v. General Tel. Co.,*
    234 Cal.App.2d 302 (1965)……………………………………………6

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    362 F.3d 1367 (9th Cir. 2004)………………………………………...11-12

*Greif v. Dullea,*
    66 Cal.App.2d 986 (1944)……………………………………………10

*H-D Mich., Inc. v. Top Quality Serv.,*
    2006 U.S. Dist. LEXIS 62451 (E.D. Wis. 2006)……………………………14-15

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons,*
    140 Cal.App.4th 515 (2006)……………………………………………13

*Lange v. TIG Ins. Co.,*
    68 Cal.App.4th 1179 (1998)……………………………………………8

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.,*
    34 Cal.4th 960 (2004)……………………………………………5, 7

*Macias v. Hartwell,*
    55 Cal.App.4th 669 (1997)……………………………………………12

*McKell v. Washington Mutual,*
    142 Cal.App.4th 1457 (2006)……………………………………………4

*Metabolife Intern., Inc. v. Wornick,*
    264 F.3d 832 (9th Cir. 2001)……………………………………………14

*Mike Nelson Co., Inc. v. Hathaway,*
    2005 WL 2179310 (E.D. Cal. 2005)……………………………………8

*Mitchell v. Fishbein,*
    377 F.3d 157 (2nd Cir. 2004)……………………………………………9

*Money Store Investment Corp. v. Southern California Bank,*
    98 Cal. App. 4th 722 (2002)……………………………………………8

*Navellier v. Sletten,*
    106 Cal.App.4th 763 (2003)……………………………………………14

*Nguyen v. Proton Technology Corp.,*
    69 Cal.App.4th 140 (1999)…………………………………………...3-4

*Otter Tail Power Co. v. United States,*
    410 U.S. 366 (1973)…………………………………………………...11

*Patent Scaffolding Co. v. William Simpson Const. Co.,*
    256 Cal.App.2d 506 (1967)……………………………………………4-5

*Publicists Local 818 of Intern. Alliance of Theatrical and Stage Emp. and*
*Motion Picture Machine Operators of the United States and Canada* v.
*National Screen Service Corp.,*
    183 Cal.App.2d 491 (1960)……………………………………………2

*Roberts v. Los Angeles County Bar Assn.,*
    105 Cal.App.4th 604 (2003)……………………………………………6

*Rogers v. Home Shopping Network, Inc.,*
    57 F.Supp.2d 973 (C.D.Cal. 1999)………………………………...13-14

*Rusheen v. Cohen,*
    37 Cal.4th 1048 (2006)…………………………………………………4

*Salma v. Capon,*
    161 Cal.App.4th 1275 (2008)…………………………………………12

*Silberg v. Anderson,*
    50 Cal.3d 205 (1990)…………………………………………..………3

*Smith v. City and County of San Francisco,*
    225 Cal.App.3d 38, 48 (1990)…………………………………………8

*Sommerfield v. Helmick,*
    57 Cal.App.4th 315 (1997)……………………………………………9

*Tal v. Hogan,*
    453 F.3d 1244 (10th Cir. 2006)………………………………………10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Thomas v. Kadish*,
    748 F.2d 276 (5th Cir. 1984)……………………………………………………..9

*Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.*,
    972 F.Supp. 1275 (C.D.Cal. 1997)………………………………………………9

*United States ex rel. Sommer v. Dixon*,
    524 F.Supp. 83 (N.D.N.Y. 1981)………………………………………………...2

*US Ecology, Inc. v. State*,
    129 Cal. App. 4th 887 (2005)………………………………………………….12

*Younger v. Harris*,
    401 U.S. 37 (1971)……………………………………………………………...10

*Youngman v. Nevada Irrigation Dist.*,
    70 Cal.2d 240  (1969)…………………………………………………………..7

*Wentland v. Wass*,
    126 Cal.App.4th 1484 (2005)………………………………………....……..4

*Wilcox v. Superior Court*,
    27 Cal.App.4th 809 (1994)…………………………………………………...13-14

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*,
    135 F.3d 658 (9th Cir. 1998)………………………………………...……13

## STATUTES AND REGULATIONS

Cal. Civ. Code, § 3358…………………………………………………………….5

Cal. Civ. Code § 47………………………………………………………………3

Cal. Civ. Code § 3301…………………….…………………………………...5

Cal. Code Civ. Pro. § 425.16……………………………………………….12, 14

Cal. Code Civ. Pro. § 1094.5……………………………………………...9

## SECONDARY AUTHORITIES

1 Witkin, Summary of Cal.Law (9th ed. 1987) Contracts, § 706……….…………...…2

Restatement of Contracts, § 90……………………………………………………9

## I.    INTRODUCTION

Clear Channel's claims in this case are premised on one single act:  Defendant Cheol Hoon Lee's pursuit of an appeal with the San Francisco Board of Appeals *after* the expiration of Clear Channel's lease.  Despite claiming repeatedly that this is not the only basis, Clear Channel fails to identify any other conduct by Mr. Lee underlying its claims.  There is no other conduct alleged in the Complaint.  There is no other conduct alleged in the declaration of Clear Channel's employee, Patrick Powers.  And there is no other conduct alleged in the twenty-two pages of Clear Channel's opposition brief.  As the law makes clear, petitioning activity such as Mr. Lee's appeal cannot be the basis for a lawsuit.  If it were otherwise, there would be a dangerous precedent opening up the courts to a flood of lawsuits by disgruntled litigants.  The fact that Clear Channel lost this appeal does not give rise to damages.  Nor does the fact that this loss, coupled with Clear Channel's heavy-handed tactics, made the billion-dollar conglomerate "look bad."  Reputational damages cannot be the basis for a breach of contract claim, and even if they were, Clear Channel has suffered none.  Clear Channel's lease was not terminated early, it has no claim of lost advertising revenues, and it fully removed the sign structure that it claims it had the right to remove.  Its only real "damage" is that it was not able to coerce Mr. Lee into renewing its lease at a fraction of market rents.  The Court should resist Clear Channel's attempts to turn an appellate proceeding into a separate federal lawsuit whose sole aim is to harass and burden an elderly man whose only "act" was a successful appeal.

## II.    ARGUMENT

### A.    Clear Channel Fails To State A Claim For Breach of Contract

Clear Channel alleges that by filing an appeal with the San Francisco Board of Appeals, Mr. Lee breached the Lease because, in so doing, he denied that Clear Channel had authority to obtain the removal permit and act pursuant to it.  Complaint, ¶¶ 17, 18, 20; Opp. pp. 5-6.  This constitutes a "breach," according to Clear Channel, because the lease "explicitly authorizes Clear Channel…to appl[y] for and obtain[] a permit to remove."  Opp., 6:10-12.  These allegations fail to state a claim for breach of contract.  First, the lease authorizes Clear Channel only to obtain permits for the "*construction and maintenance* of Lessee's signs." Complaint, Ex. A, ¶ 4 (emphasis added).  The

1    permit that Clear Channel unlawfully obtained and now complains about was for the *removal* of the

2    sign structure.  Nowhere in the lease is there any mention of permits for the *removal* of the sign

3    structure, let alone express authorization to obtain them.[1]  Even if Clear Channel believes that Mr.

4    Lee was under an obligation to authorize a permit, nowhere does it allege that it sought and was

5    denied such authorization from Mr. Lee.[2]  As neither the lease nor Clear Channel's allegations show

6    that it had authorization to obtain the removal permit, Clear Channel cannot assert Mr. Lee's

7    "denial" of authorization as a basis for its claim.[3]

8         The other basis for a claim of "breach" asserted by Clear Channel in its Opposition is equally

9    meritless.  Clear Channel asserts that the September 5, 2006 letter from Mr. Lee, attached as Exhibit

10   C to the Complaint, is among the "acts and omissions" constituting a breach of the lease.  The letter

11   sets forth Mr. Lee's belief that the lease would expire under its own terms on December 15, 2006,

12   requests that Clear Channel remove the advertising copy from the billboard at that time, and asserts

13   that additional rents will be due should Clear Channel not comply. None of Clear Channel's claims

14   for breach of contract in its Complaint have anything at all to do with advertising copy, lease

15   termination, or rents.  The letter, in fact, is silent on those matters upon which Clear Channel now

16   sues – the sign structure, removal permits, and the appeal.  Clear Channel does not allege anywhere

17   that it was prevented from displaying its advertising copy, that it paid additional rents, or that Mr.

18   Lee forced an early termination of the lease.  To the contrary, Clear Channel's own allegations

19   _____

20   [1]   If the allegations of a complaint are contradicted by documents made a part thereof, the
     document controls and the Court need not accept as true the allegations of the complaint.  *See Feick*
21   *v. Fleener*, 653 F.2d 69, 75 & n. 4 (2nd Cir. 1981); *United States ex rel. Sommer v. Dixon*, 524
     F.Supp. 83, 85 (N.D.N.Y. 1981).
22   [2]   Clear Channel's failure to demand performance also precludes it from bringing an action for
     breach.  "Unless a contract contains an unconditional promise to perform at a fixed time, a demand
23   is usually necessary in order to give the promissor an opportunity to perform and may be a condition
     precedent to the obligation to perform." *Drake v. Martin*, 30 Cal.App.4th 984, 998-9 (1994) (citing 1
24   Witkin, Summary of Cal.Law (9th ed. 1987) Contracts, § 706, p. 641)).  "'One who makes a
     promise to do something in the future, having the ability to do it, and no time having been specified
25   for performance, does not violate his agreement until he refuses to perform after demand made.'"
     *Publicists Local 818 of Intern. Alliance of Theatrical and Stage Employees and Motion Picture*
26   *Machine Operators of the United States and Canada v. National Screen Service Corp.*, 183
     Cal.App.2d 491, 498 (1960).
27   [3]   Clear Channel also fails to account for the fact that its permit was rescinded based, in part, on
     acts purely of its own making – its failure to wait the requisite 15 day appeal period before
28   removing the sign.  Request for Judicial Notice, Ex. 1, ¶ 24.

1   demonstrate that it did nothing at all in response to the letter: Clear Channel continued to occupy the

2   sign until May 2007 – the time Clear Channel contends that the lease terminated.  Complaint, ¶¶ 14-

3   18.   As none of the claims or damages alleged in the Complaint have anything to do with the

4   September 5, 2006 letter, Clear Channel cannot predicate a breach of contract claim on this basis.

5                   **B.        California's Litigation Privilege Bars Clear Channel's Claims**

6           Clear Channel's claims must also be dismissed based upon California's litigation privilege.

7   Cal. Civ. Code § 47 privileges publications and broadcasts made in legislative and judicial

8   proceedings from being the basis for liability.  The privilege applies "to any communication (1)

9   made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by

10  law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical

11  relation to the action."  *Silberg v. Anderson,* 50 Cal.3d 205, 212 (1990).  In its Opposition, Clear

12  Channel offers two reasons for why it believes the California's litigation privilege does not apply

13  to bar its breach of contract claims.  Both are without merit.

14          First, Clear Channel contends that the litigation privilege applies only to "publications and

15  communications" and that since it is Mr. Lee's "acts and omissions" rather than his

16  communications that give rise to its claims of breach, the privilege does not immunize Mr. Lee

17  from liability.   This argument makes no sense.  The very "acts" upon which Clear Channel bases

18  its breach of contract claim are Mr. Lee's filing of the appeal[4] and the "claims" he allegedly made

19  in the substance of his appeal.  Opp., pp. 5-6, Complaint, ¶ 20. Nowhere in its Complaint or in its

20  Opposition does Clear Channel suggest that its cause of action is based on any other "acts."[5]  In

---

[4]      Of course, it is somewhat difficult to tell exactly what Clear Channel believes with respect
to the filing of the appeal itself.  It claims in its Opposition variously that  Mr. Lee's filing of the
appeal "is not the 'only act' of which [it] complains" (Opp., 5:25-26), that "the filing of [the]
appeal is not the basis of this lawsuit" (Opp.,19:21), that "Mr. Lee has contracted not to appeal the
permit to remove the sign structure" (Opp., 20:4), and  yet "Clear Channel does not dispute that
Mr. Lee has the right to petition the Board of Appeals in connection with the DBI Removal
Permit" (Opp., 17:8-9).  Whatever Clear Channel's position may be, Mr. Lee's filing of an appeal
is protected conduct under Cal.Civ.Code § 47.   "[T]he filing of a legal action…by its very nature
is a communicative act. The filing of a legal action is not an independent, noncommunicative,
wrongful act. We contemplate no communication that is more clearly protected by the litigation
privilege than the filing of a legal action." *Action Apartment Assn., Inc. v. City of Santa Monica*,
41 Cal.4th 1232, 1249 (2007) (internal citations omitted).

[5]      Clear Channel also points to the September 5, 2006 letter Mr. Lee sent regarding the Lease's
expiration date and removal of advertising upon expiration.  As discussed *supra*, this letter cannot
possibly be a basis for Clear Channel's breach of contract claim.  But even if it could, it too would
fall within the protections of Cal.Civ.Code § 47, notwithstanding the fact that it was sent before Mr.
Lee initiated his appeal.  "[T]he 'litigation privilege' applies to pre-litigation communications as

(continued...)

1    making this argument, it would appear that Clear Channel thinks that because "saying something"

2    is also always necessarily "doing something," it is permitted to sue on the "doing" and ignore the

3    "saying." This is not so. As Clear Channel acknowledges, the "'threshold issue in determining the

4    applicability' of the privilege is whether the defendant's conduct was communicative or

5    noncommunicative." Opp., p. 7 (quoting *Rusheen v. Cohen*, 37 Cal.4th 1048, 1058 (2006)).  There

6    can be no dispute that the conduct of which Clear Channel complains are statements made or

7    positions taken by Mr. Lee in a quasi-judicial proceeding. That conduct cannot therefore form the

     basis of a breach of contract (or promissory estoppel) claim.

8          Clear Channel's second argument – that the litigation privilege does not apply to contract

9    claims – is equally without basis. California courts have unambiguously stated that the privilege

10   may apply to bar breach of contract claims where, such as in this case, to do so would further

     privilege's objective. "[W]hether the litigation privilege applies to an action for breach of contract

11   turns on whether its application furthers the policies underlying the privilege." *1100 Park Lane

12   Associates v. Feldman*, 160 Cal.App.4th 1467, 1486 (2008) (litigation privilege precluded

13   subtenants' breach of contract claim based on lease, where the breach was premised on allegedly

14   wrongful conduct by landlord in threatening and bringing unlawful detainer litigation over the

15   subtenancy) (internal quotations omitted). "[T]he purpose of the litigation privilege is to ensure

16   free access to the courts, promote complete and truthful testimony, encourage zealous advocacy,

     give finality to judgments, and avoid unending litigation." *Wentland v. Wass*, 126 Cal.App.4th

17   1484, 1492 (2005).[6] Here, where the only conduct alleged by Clear Channel is Mr. Lee's

18   successful petition of the Board of Appeals and claims he allegedly made in the course thereof, the

19   policies underlying litigation privilege could not be more evident.  Accordingly, Clear Channel's

20   claims must be dismissed.

21

22          **C.    Clear Channel Has Not Alleged Any Cognizable Damages**

23   _____

24          (...continued from previous page)
     well as those occurring during the course of actual litigation." *Nguyen v. Proton Technology Corp.*,

25   69 Cal.App.4th 140, 147 (1999).
     [6]    Clear Channel also suggests that the litigation privilege can only be applied in a summary

26   judgment proceeding, not at a motion to dismiss. This is untrue. There are numerous cases
     applying the litigation privilege in demurrer proceedings (the California equivalent of a motion to

27   dismiss).  *See, e.g., Foothill Federal Credit Union v. Superior Court*, 155 Cal.App.4th 632, 643
     (2007).

28

1    Damages are a necessary element of an action for breach of contract. *McKell v.*

2  *Washington Mutual,* 142 Cal.App.4th 1457, 1489 (2006); *Patent Scaffolding Co. v. William*

3  *Simpson Const. Co.*, 256 Cal.App.2d 506, 511 (1967). In its Complaint, Clear Channel alleges that

4  the damages it suffered as a result of the alleged breach were the Board of Appeals' rescission of

5  Clear Channel's permit, injury to its good will, and "substantial expenses" it incurred to counteract

6  the alleged breach of contract. Complaint, ¶ 24. Mr. Lee's opening papers set forth the reasons

7  why, based on Clear Channel's own allegations, none of these constitute cognizable damages. As

8  Clear Channel would have found itself in exactly the same position with respect to these

9  "damages" had the alleged breach not occurred, and since damages for breach of contract cannot

10  exceed what would have been received had the contract had been fully performed, Clear Channel

11  cannot state a cause of action for breach of contract. *See Lewis Jorge Const. Management, Inc. v.*

12  *Pomona Unified School Dist.*, 34 Cal.4th 960, 968 (2004) (citing Cal. Civ. Code § 3358); *Patent*

13  *Scaffolding Co.*, 256 Cal.App.2d at 511 (1967) ("A breach of contract without damage is not

14  actionable.").

    Having failed to allege cognizable damages in its Complaint, Clear Channel makes a

second attempt, setting forth all new categories of damages in its Opposition. Clear Channel

asserts, for the first time, that it suffered a loss of "the value of the right to remove a lawfully

erected non-conforming sign structure." Opp., 9:4-6. First, this category of damages is not

identified in the Complaint and cannot be alleged in the Opposition in order to save Clear

Channel's claim. "[I]t is axiomatic that the complaint may not be amended by the briefs in

opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th

Cir.1984), *cert. denied,* 470 U.S. 1054 (1985). Second, the suggestion that the loss of this "right"

constitutes damage is absurd. As it alleges in its Complaint, Clear Channel in fact removed the sign

structure which it claims it was entitled to do. Complaint, ¶ 17. How can Clear Channel be

damaged by the "loss" of the right to remove something that no longer exists because Clear

Channel has already removed it? In what way has Clear Channel suffered a loss by the supposed

deprivation of a right it has already exercised? How would it be made whole? "No damages can be

recovered for a breach of contract which are not clearly ascertainable in both their nature and

origin." Cal.Civ.Code, § 3301. Far from certain and ascertainable, this category of damage is

purely phantasmal.

    Clear Channel goes on in its Opposition to introduce another category of damages that

appears nowhere in the Complaint: investments in the form of taxes and expenses for the sign

structure it allegedly paid "in the expectation that it would continue to maintain ownership and the right to remove the sign indefinitely." Opp., 9:8-10. Clear Channel claims that it is entitled to the "lost expectancy value" of the investments. Opp., 9:11-12. Again, Clear Channel wound up removing the sign structure to which it claims it was entitled and alleges that it did so "voluntarily" and "as was its right under the terms of the Lease." Complaint, ¶¶ 15, 17. Indeed, Clear Channel removed the sign structure at the time it alleges the Lease expired, and still has the sign. Complaint, ¶¶ 13, 17. As its own admissions show that Clear Channel received everything it contends it was entitled to receive under the Lease, it cannot now claim it suffered damages.[7]

Clear Channel also attempts to redefine its "loss of goodwill" damages. Clear Channel appears to concede that where there is no ongoing relationship at the time of the alleged breach, a plaintiff cannot recover damages for loss of goodwill because there is no "expectation of continued public patronage" in connection with the relationship. *See, e.g., California Beverage & Supply Co. v. Distillers Distributing Corp.*, 158 Cal.App.2d 758, 765-66 (1958.) Instead, in its Opposition, Clear Channel claims that "it erroneously appears to third parties, including Clear Channel's lessors, that Clear Channel improperly trespassed onto Mr. Lee's property and took down Mr. Lee's sign." Opp., 10:2-3. Apparently, Clear Channel believes that Mr. Lee's successful appeal injured its reputation. Such injury, however, is not a basis for recoverable damages. "The invariable rule is pronounced by a legion of cases that damages are not recoverable for [...] injury to reputation resulting from breach of contract.'" *Roberts v. Los Angeles County Bar Assn.,* 105 Cal.App.4th 604, 617 (2003); *Gautier v. General Tel. Co.*, 234 Cal.App.2d 302, 306 (1965) ("in a breach of contract action the plaintiff is not entitled to damages for injury to his (or her) name, character or personal reputation").[8]

Clear Channel offers one more theory of damages in its Opposition, which is again alleged nowhere in its Complaint. It claims that it is entitled to damages for money spent on obtaining the

---

[7]     Tellingly, none of these new "damages" are set forth in Clear Channel's original or amended initial disclosures, nor have there been any documents produced regarding these alleged damages. Clear Channel's only "damages" to date in its initial disclosures are the costs of the permit itself and the costs of removing the sign – neither of which are cognizable damages, because Clear Channel would have incurred those costs even if the alleged "breaches" had never occurred.

[8]     To the extent that Clear Channel is claiming that Mr. Lee committed some separate act – beyond pursuing an appeal – that defamed or slandered it, that is not alleged in the Complaint. And there are stringent pleading requirements for such causes of action that Clear Channel does not and cannot attempt to meet.

removal permit that the Board of Appeals subsequently revoked and amended.[9] Opp., 10:7-13.  Its

theory is that because the permit has no value once revoked, money spent acquiring the permit

should be recoverable.  Here again, Clear Channel ignores the fact that it alleges that it performed

all work initially authorized by the permit and removed the sign structure it claims to own.

Complaint, ¶¶ 15-17.  It is not the case that Clear Channel incurred expenses to obtain a permit and

was then denied the permit before the work authorized could be completed.  Clear Channel in fact

received everything it would have received had Mr. Lee not sought revisions to the permit.

Accordingly, it cannot claim damages based upon the Board of Appeals' revocation and

amendment of the permit.  *Lewis Jorge*, 34 Cal.4th at 967-8.  Because Clear Channel fails to allege

any cognizable damages, its breach of contract claim must be dismissed.

###    D.    Clear Channel Fails to State A Claim for Promissory Estoppel

Clear Channel's Complaint fails to state a cause of action for promissory estoppel because

that cause of action relies upon the existence of a bargained-for contact (the Lease).  *Youngman v.*

*Nevada Irrigation Dist.,* 70 Cal.2d 240, 249-50 (1969) ("It is only where the reliance was

unbargained for that there is room for application of the doctrine of promissory estoppel")

(citations and quotations omitted).  To counter this, in its Opposition, Clear Channel argues that its

promissory estoppel claim is *really* based on promises that are not part of the Lease, but rather Mr.

Lee's conduct during the term of the lease – including the September 5, 2006 letter regarding the

expiration date of the lease and removal of advertising.  This is clearly not true.  First, Clear

Channel is once again attempting to redraft its Complaint in its Opposition.  The Complaint, in

fact, alleges no "promises" outside of the lease as the basis for the promissory estoppel claim.  Its

only allegations involve "clear and unambiguous promises to allow Clear Channel to obtain the

Removal Permit for the purpose of voluntarily removing its signs, structures and improvements."

Complaint, ¶ 26.  These promises allegedly flow from Mr. Lee having "acknowledged" Clear

Channel's "ownership of the signs, structures and improvements,…its right to voluntarily remove

the signs, structures and improvements,… [and its] right obtain [sic] permits from governmental

bodies respecting [the] signs, structures and improvements and to act in accordance with the

---

[9]    Clear Channel mistakenly states that this category of damages was alleged in the Complaint.
It was not.  The "expenses" alleged in the complaint were to "counteract the aforesaid breaches."
Complaint, ¶ 7.  To the extent that this refers to Clear Channel's litigation expenses, Clear Channel
has acknowledged that it is not entitled to attorney's fees.  Opp.,14.  To the extent that this refers to
the cost of obtaining the permit in the first place, that, too, is not recoverable because it was incurred
(continued...)

permits." Complaint, ¶ 26.  Yet Clear Channel admits that these alleged acknowledgements, from which the "promise" is inferred, were made *in the Lease*.  Complaint, ¶ 11 ("Thus, by the terms of the Lease, Defendant expressly acknowledged Clear Channel's ownership of the signs, structures and improvements and its rights…to either voluntarily remove…").  Further, the "breach" Clear Channel claims in its promissory estoppel claim is duplicative of the breach alleged in the contact claim, and includes Mr. Lee's alleged denial of Clear Channel's "contractual right to obtain the Removal Permit." Complaint, ¶ 27.[10]  Clear Channel's promissory estoppel claim as alleged in its Complaint is thus unambiguously based on a bargained-for contract.  As such, it must be dismissed.  *Mike Nelson Co., Inc. v. Hathaway*, 2005 WL 2179310, *3 n.4  (E.D. Cal. 2005) (granting defendants' motion to dismiss promissory estoppel cause of action where plaintiff had alleged existence of a bargained-for contract as the basis for its claim); *Money Store Investment Corp. v. Southern California Bank*, 98 Cal. App. 4th 722, 731 (2002) (granting summary adjudication on plaintiff's claim of promissory estoppel where claim was based on contract).

    Even if the Court were to consider the promissory estoppel claim as having been made solely on the basis of the September 5, 2006 letter (no other "conduct during the term of the lease" is alleged in the Complaint), Clear Channel's claim must still fail.  First, it is plain that the subject matter of the letter is the parties' obligations under the lease.  Complaint, Ex. C.  Clear Channel acknowledges as much in its opposition, by insisting that its breach of contract claim is based, in part, on the letter. Oppo, p. 6:2-4.  Because the letter relies upon the existence of a bargained-for contract (the lease), the letter cannot be the basis for a promissory estoppel claim.  *Mike Nelson Co.*, 2005 WL 2179310, *3 n.4.  Second, even if that were not the case, Clear Channel cannot state a claim for promissory estoppel based on the letter alone.  For a promise to be binding in order to give rise to a claim for promissory estoppel, that promise must be clear and unambiguous in its terms. *Lange v. TIG Ins. Co.*, 68 Cal.App.4th 1179, 1185 (1998).  The September 5, 2006 letter does not contain *any mention at all* of permits or the sign structure, let alone any clear and unambiguous promises concerning them – it concerns only the expiration of the lease and removal of advertising copy and rents, none of which were the subject of the permit or form the basis for

---

    (...continued from previous page)
prior to the filing of Mr. Lee's appeal and would have been incurred under any circumstances if Clear Channel was correct about its right to remove the sign.
[10]    The letter which Clear Channel now claims in its Opposition is *really* the basis for its promissory estoppel claim appears nowhere in the cause of action, except insofar as the cause of action incorporates all prior allegations, which, of course, also includes the allegations of a bargained-for contract.  Complaint, ¶ 25.

Clear Channel's claims.  *See* fn. 1 *infra.*  Third, in order to state a claim for promissory estoppel, Clear Channel must allege detrimental reliance on the supposed promise.  *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 48 (1990) (sustaining demurrer without leave to amend where no facts demonstrating detrimental reliance were pled).  That is, Clear Channel must show that the promise induced it to undertake some "action or forbearance" to its detriment.  *C & K Engineering Contractors v. Amber Steel Co.,* 23 Cal.3d 1, 6 (1978) (adopting Restatement of Contracts, § 90); *Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc*., 972 F.Supp. 1275, 1284 (C.D.Cal. 1997).  Here, it is plain from the allegations of the Complaint that Clear Channel undertook no action whatsoever in response to the letter.[11]  Complaint, ¶¶ 14-17.  It was not forced to terminate the lease early or remove advertising prematurely.  *Id.*  Clear Channel could thus not state a claim for promissory estoppel based on the letter, even if it had alleged it as the basis for its claim. Accordingly, the promissory estoppel cause of action must be dismissed.

### E.    The *Rooker-Feldman* Doctrine Bars CCO's Declaratory Relief Claim

Clear Channel argues in its opposition that the *Rooker-Feldman* doctrine does not preclude this court from adjudicating its declaratory relief action because 1) there is no state court judgment and 2) its claim for declaratory relief does not invite this court to review and reject the decision of the San Francisco Board of Appeals.  Both arguments are meritless.

First, although Clear Channel claims that there is no state court judgment, it fails to address or even acknowledge the authority cited in Mr. Lee's Motion to Dismiss, originating with the Supreme Court's decision in *Feldman,* which holds that though administrative decisions do always not fall within the purview of *Rooker-Feldman,* where an administrative body is acting in a quasi-judicial or judicial capacity, its decisions are considered "judgments" for purposes of the doctrine. See *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 477-79 (1983);  *Mitchell v. Fishbein*, 377 F.3d 157, 166-67 (2nd Cir. 2004); *Allstate Insurance Co. v. West Virginia State Bar,* 233 F.3d 813, 817-18 (4th Cir.2000); *Thomas v. Kadish,* 748 F.2d 276, 281-82 (5th Cir. 1984).[12]

---

[11]    Clear Channel states that it "honored Defendant's request to terminate the Lease" as a result of the September 5, 2006 letter.  Complaint, ¶ 15.  However, the Complaint and its exhibits show otherwise.  The letter did not "request to terminate the Lease" but asserted that the Lease would expire on its own terms on December 15, 2006 and that Clear Channel should remove its advertising copy by that time. Complaint, Ex. C.  Far from complying with the letter, Clear Channel alleges that it did not begin to vacate the premises until May 11, 2007 and did not substantially do so until on or before May 21, 2007 – after Clear Channel contends the lease terminated. Complaint, ¶¶ 13,17.

[12]    When a case is brought in federal court seeking review of an appealable state court order or judgment, the fact that underlying proceedings are not concluded does not prevent application of *Rooker-Feldman. See, e.g.*,*Tal v. Hogan*, 453 F.3d 1244, 1257 (10th Cir. 2006);

(continued...)

Clear Channel does not dispute that the decision of the Board of Appeals is quasi-judicial in nature. *See* Cal. Code Civ. Pro. Sec. § 1094.5; *Sommerfield v. Helmick,* 57 Cal.App.4th 315, 320 (1997); *Greif v. Dullea*, 66 Cal.App.2d 986, 1006-07 (1944). The Board of Appeals' decision is therefore a "state-court judgment" for purposes of applying *Rooker-Feldman*.

Second, Clear Channel argues that it does not complain of injuries caused by the state court judgment and that it is not seeking review of that judgment. Instead, it claims its injuries merely stem from "Mr. Lee's conduct." That conduct, however, is pursuing a successful appeal resulting in a decision revoking and amending the permit. And, based upon Clear Channel's declaratory relief claim, this Court could not grant the requested relief without disturbing the decision of the Board of Appeals. Clear Channel prays for the Court to declare that it "has the right to voluntarily remove (or to not remove) the signs, structures and improvements at its sole discretion" even though the Board of Appeals determined that it did not have the authority to obtain the permit authorizing such work. Similarly, this Court could not declare that "Clear Channel has the right to obtain the Removal Permit" without overturning the Board of Appeals, which expressly decided that it did not. This Court could not declare that "the Removal Permit was the property of Clear Channel" without overturning the Board of Appeals' decision that permit was invalid and not properly issued to Clear Channel. This Court could not declare that "Clear Channel is not liable to Defendant for obtaining the Removal Permit pursuant to its rights and voluntarily removing Clear Channel's signs, structures and improvements pursuant to the Removal Permit" without overturning the Board of Appeals' decision that Clear Channel improperly obtained the permit and conducted work pursuant to it. A claim is "inextricably intertwined" with a state court judgment so as to trigger *Rooker-Feldman* when the claim "succeeds only to the extent that the state court wrongly decided the issues before it [or] if the relief requested ... would effectively reverse the state court decision or void its ruling." *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995). The doctrine applies even where the attack on the state court judgment is indirect. *Calvert v. Safranek,* 209 Fed.Appx. 816, 819 (10th Cir. 2006). The relief requested here by Clear Channel can only be granted by reversing the Board of Appeals. Accordingly, it would not be proper for this court to exercise jurisdiction over Clear Channel's declaratory relief action.

---

(...continued from previous page)
*Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 27-28(1st Cir. 2005) ("neither § 1257 finality nor state law preclusive effect is necessary" to oust jurisdiction under *Rooker-Feldman*.)

1    Should the Court determine that it does have jurisdiction over Clear Channel's declaratory

2  relief claim, the fact that the requested relief cannot be granted without disturbing the Board of

3  Appeals' decision, which was rendered on the basis of important state law issues and is now

4  submitted for review to the California courts, means this Court should nevertheless abstain from

5  adjudicating the claim pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, as set

6  forth in Mr. Lee's moving papers.

### F.    Principles of the Noerr-Pennington Doctrine Bar Clear Channel's Claims

7    Clear Channel concedes that *Noerr-Pennington* immunity has been expanded to apply to

8  claims brought outside of the antitrust context, but claims that *Noerr* immunity does not apply to

9  bar this particular action for two reasons.  Both are mistaken. First, relying on the decision in

10  *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*,  493 U.S. 411 (1990) not to extend

11  *Noerr* immunity to per se antitrust violations in the form of economically motivated boycotts,

12  Clear Channel contends because it does not complain of injuries resulting from government action,

13  *Noerr* does not apply.  Not so.  Clear Channel's alleged injury in this case is the revocation and

14  amendment of the permit – a governmental response to Mr. Lee's protected right to petition.

15  Complaint, ¶ 24; Opp, 8:18-10:13.  Second, Clear Channel argues, without citation to any

16  authority, that Mr. Lee's conduct cannot be characterized as petitioning activity.  In so doing, Clear

17  Channel repeats the false distinction between petitioning and the conduct constituting petitioning.

18  This too is baseless. Clear Channel's Complaint is predicated on Mr. Lee's pursuit of an appeal.[13]

19  The *Noerr-Pennington* doctrine applies to "petitions" before legislatures, administrative agencies,

20  and courts. *See, e.g., Otter Tail Power Co. v. United States,* 410 U.S. 366, 379-80 (1973);

21  *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). "Even *false*

22  statements presented to support such petitions are protected."  *Davric Maine Corp. v. Rancourt*,

23  216 F.3d 143, 147 (1st Cir. 2000) (emphasis in original). As Clear Channel has alleged nothing

24

25

26  [13]    Clear Channel also asserts that the September 5, 2006 letter is the basis for its claims and that this letter falls outside the scope of petitioning activity.  As discussed herein, despite Clear Channels assertions in its Opposition, the letter forms the basis of none of Clear Channel's claims or damages. Even if it did, however, it would be protected.  *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1376-77 (9th Cir. 2004) (*Noerr-Pennington* immunity covers pre-litigation communications).

27

28

1   other than Mr. Lee's conduct in furtherance of his rights to petition as a basis for its action, its

2   claims must be dismissed.

3       **G.      Clear Channel's Complaint is Barred by Anti-SLAPP**

4       Clear Channel's entire Complaint is barred by California's anti-SLAPP statute, which

5   prohibits litigation based purely on an individual's lawful right to petition.  In its Opposition, Clear

6   Channel contends that California's anti-SLAPP statute does not apply because 1) its Complaint is

7   not based on protected activity, 2) Mr. Lee has waived his right to petition, and 3) Clear Channel has

8   established a probability of prevailing on the merits.  All three arguments are meritless.

9       First, Clear Channel contends that that its Complaint is not based on Mr. Lee's petitioning

10  conduct.  In so doing, it attempts to separate the act of petitioning from the substance of the petition.

11  That is, Clear Channel says that its Complaint is not based on Mr. Lee's filing with the San

12  Francisco Board of Appeals, but rather on the contents of "claims" made in that appeal.[14]  This

13  position is completely meritless. The statute protects any *act* of the defendant in furtherance of his or

14  her right of petition or free speech, under the federal or state constitutions, made in connection with

15  a public issue. Cal. Code Civ. Pro. § 425.16.  It also specifically protects "written and oral

16  statements" made in official, executive, or judicial proceedings as well as "any other conduct"

17  undertaken in furtherance of the right of petition. Cal. Code Civ. Pro § 425.16 (e).  Mr. Lee's filing

18  _____

19  [14]     Clear Channel also tries to claim that its complaint is based on the September 5, 2006 letter
    regarding the expiration date of the lease.  Opp., 19:15-19.  This letter has nothing to do with the
20  removal permit, the sign structure or any of the "rights" which Clear Channel complains Mr. Lee
    denied.  Complaint, Ex. C.  In fact, Clear Channel's own allegations establish that it completely
21  ignored the letter and stayed through what it claimed was the correct lease term.  Complaint, ¶¶ 14-
    18.  There is no allegation that any party changed its position in response to this letter.  *Id.*  Further,
22  every category of damage alleged by Clear Channel is based on the Board of Appeals' decision to
    revoke and amend the removal permit and ensuing consequences; none have even a conceptual – let
23  alone causal – relationship to the September 5 letter.  *See US Ecology, Inc. v. State*, 129 Cal. App. 4th
    887, 909 (2005) ("The test for causation in a breach of contract (or promissory estoppel) action is
24  whether the breach was a substantial factor in causing the damages.").  "Causation of damages in
    contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's
25  breach, and that their causal occurrence be at least reasonably certain."  *Id.*  Clear Channel's
    assertion of the letter is an attempt to confuse and distract from the allegations it actually makes,
26  which are based on the Board of Appeals proceedings.  However, even if the letter did form the basis
    of its claims, it would still be protected.  Communications that are made to prepare for good faith
27  litigation, which is under serious consideration at the time of the communications, are protected by §
    425.16 of the anti-SLAPP statute.  *Salma v. Capon*, 161 Cal.App.4th 1275, 1286 (2008).  This
28  includes communications by mail.  *Macias v. Hartwell*, 55 Cal.App.4th 669, 674 (1997).

1  of the appeal and "claims" and "denials" that he allegedly made in the course of it are all protected

2  activity and cannot form the basis for liability.

3       Second, Clear Channel asserts that the anti-SLAPP statute should not apply because Mr. Lee

4  has "waived" his right to anti-SLAPP protection.  This is because Mr. Lee allegedly "contracted not

5  to appeal the permit to remove the sign structure. " Opp, p. 20:4-5.  Yet only three pages earlier in its

6  Opposition, Clear Channel "does not dispute that Mr. Lee *has the right to petition the Board of*

7  *Appeals in connection with the DBI Removal Permit*." Opp., p. 17:8-9 (emphasis added).  Further,

8  and more importantly, Mr. Lee never contracted to waive his right to petition and Clear Channel has

9  not and cannot point to any covenant in the lease establishing otherwise.  As shown in Mr. Lee's

10  Motion to Dismiss, as well as the Lease itself (which is attached to Clear Channel's Complaint and

11  Opposition), there is no mention whatsoever of removal permits or proceedings before the Board of

12  Appeals or any other administrative or judicial body.[15]  Complaint, Ex. A; Powers Decl., Ex. A.  Nor

13  can a waiver of Mr. Lee's right to petition be implied. " 'A waiver of First Amendment rights may

14  only be made by a 'clear and compelling' relinquishment of them....  Moreover, it is well established

15  that courts closely scrutinize waivers of constitutional rights, and indulge every reasonable

16  presumption against a waiver.' " *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140

17  Cal.App.4th 515, 531 (2006).  Clear Channel has not and cannot show a waiver of Mr. Lee's right to

18  petition the Board of Appeals.

19       Third, Clear Channel claims that even if the anti-SLAPP statute applies to its claims, it has

20  established a probability of prevailing on the merits.  It has not.  To meet its burden, Clear Channel

21  must demonstrate that "the complaint is legally sufficient and supported by a prima facie showing of

22  facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox v.*

23  *Superior Court*, 27 Cal.App.4th 809, 823 (1994) (disapproved on other grounds in *Equilon*

24  *Enterprises v. Consumer Cause, Inc.,* 29 Cal.4th 53, 68, fn. 5 (2002)). A defendant's anti-SLAPP

25  motion should be granted when a plaintiff presents an insufficient legal basis for the claims or "when

26

27  [15]     Where a contract is attached or integrated into a complaint, the Court has the ability to
    examine and interpret it for purposes of a motion to dismiss. *Wyler Summit Partnership v. Turner*
28  *Broadcasting System, Inc.*,135 F.3d 658, 665 (9th Cir. 1998).

1  no evidence of sufficient substantiality exists to support a judgment for the plaintiff." *Id.* As set

2  forth below and in the opening moving papers, Clear Channel has failed allege facts sufficient to

3  state any causes of action. The anti-SLAPP motion should therefore be granted on Mr. Lee's FRCP

4  12(b)(6) motion. *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 983 (C.D.Cal. 1999).

5     Clear Channel's submission of additional "evidence" with its opposition does not change

6  this.   Here, Clear Channel's opposition includes a declaration from its Real Estate Manager, Patrick

7  Powers, purporting to offer factual evidence based on personal knowledge of events occurring 70

8  years ago.  Even if this extrinsic evidence is taken at face value, it still does not establish a

9  probability of Clear Channel prevailing on the merits.  At most, it simply changes the motion to one

10  that should be considered under the summary judgment standard.  See *American Nat. Red Cross v.*

11  *United Way California Capital Region*, 2008 WL 2302188 *4 (E.D.Cal. 2008) (where parties

12  submitted affidavits outside the pleadings upon which court relied, anti-SLAPP motion would be

13  considered under Rule 56); *Rogers*, 57 F.Supp.2d at 983 (where an anti-SLAPP motion is

14  considered based on the plaintiff's alleged failure of proof, as opposed to the legal insufficiency of its

15  claims, "the motion must be treated in the same manner as a motion under Rule 56 except that again

16  the attorney's fees provision of § 425.16(c) applies").  This is a standard that Clear Channel still fails

17  to meet.

18     When an anti-SLAPP motion is considered under Rule 56, a plaintiff has the burden of

19  proving its prima facie case with admissible evidence. *Metabolife Intern., Inc. v. Wornick*,  264 F.3d

20  832, 840 (9th Cir. 2001); *Evans v. Unkow,* 38 Cal.App.4th 1490, 1497-8 (1995). "Plaintiff 'cannot

21  simply rely on [his] pleadings, even if verified, but must adduce competent, admissible evidence' to

22  establish a probability of prevailing on the merits." *Fabbrini v. City of Dunsmuir*, 544 F.Supp.2d

23  1044, 1051 (E.D. Cal. 2008). The admissible evidence, if credited, must constitute a prima facie

24  showing of facts to sufficient to sustain a favorable judgment.  *Wilcox*, 27 Cal.App.4th at 823.

25  Failure to submit admissible evidence of any element of a claim will result in the granting of an anti-

26  SLAPP motion.  *Navellier v. Sletten*, 106 Cal.App.4th 763, 775 (2003) (granting anti-SLAPP motion

27  to strike where plaintiff had failed to submit admissible evidence of damages in support of its breach

28  of contract claim).  Here, Clear Channel's "evidence" as to sign ownership fails, because it does not

1    (and probably cannot) establish that the declaration is based on personal knowledge. The

2    construction of the sign structure in question took place 70 or more years ago, and Mr. Powers omits

3    to mention any basis for personal knowledge of this event, much less whether he was even alive at

4    that time. *See H-D Mich., Inc. v. Top Quality Serv.*, 2006 U.S. Dist. LEXIS 62451, *6 (E.D. Wis.

5    2006), *rev'd on other grounds*, 496 F.3d 755 (7th Cir. 2007) (where declaration is allegedly based on

6    personal knowledge but does not adequately explain the origin of such knowledge, it cannot be

7    considered on summary judgment); *Contessa Food Prods. v. Lockpur Fish Processing Co.*, 2003

8    U.S. Dist. LEXIS 26682, *22-23 (C.D. Cal. 2003) ("Any declaration submitted with summary

9    judgment proceedings must be [] based on personal knowledge [and] state facts that would be

10    admissible in evidence – i.e., evidentiary facts, not conclusions"). Moreover, Clear Channel fails to

11    submit any evidence whatsoever establishing the other necessary aspects of its causes of action, such

12    as its performance under the lease, Mr. Lee's alleged breach, any damages it suffered, any extra-

13    contractual promises it complains that Mr. Lee made, or its reasonable detrimental reliance on any

14    such promise. As Clear Channel has failed to submit admissible evidence for virtually all of the

15    elements of the causes of action it alleges, it cannot prove a prima facie case, much less establish a

16    probability of prevailing on the merits. Should the Court therefore consider Clear Channel's

17    proffered evidence pursuant to Rule 56, Defendant's motion should still be granted.[16]

18        **III.    CONCLUSION**

19        Based on all of the foregoing, Mr. Lee respectfully requests that this Court dismiss Clear

20    Channel's Complaint in its entirety with prejudice. Clear Channel's request for attorney's fees

21    should also be stricken. Opp., p. 14 (Clear Channel conceding striking of attorney's fees).

22

23    DATED: September 3, 2008                    LUKENS LAW GROUP

24                                           By:    /s/ Jennifer L. Jonak
25                                                  Jennifer L. Jonak
                                                    Attorneys for Defendant Cheol Hoon Lee
26

---

27    [16]    If the Court applies a FRCP 56 standard to this motion and denies any part of it, Defendant
28    respectfully requests that the ruling be without prejudice to Defendant filing a further motion for
      summary judgment after discovery.

1

### Certificate

2

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 3rd day of September 2008 with the foregoing document via the Court's Electronic Case Filing system and that all parties in this action are represented by counsel who are ECF participants.

3

4

5
                             /s/ Jennifer L. Jonak

                                Jennifer L. Jonak

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28